| 78 415
|160 266

## JAMES CUDDY

*v.*

## JAMES BROWN *et al.*

1. PROOF OF HEIRSHIP—*hearsay evidence admissible.* Hearsay testimony is admissible in questions of pedigree.

2. Where a party, owning real estate, died without issue, and it appeared that he originally came from a certain locality in Ireland, and that he had frequently spoken, amongst his friends, of his father and brothers, half brothers and a sister, naming some of them, still residing where he came from, and parties claiming to be heirs of the deceased proved that their father lived in the same locality; that it was common report in their family that they had an uncle in America of the same name of deceased; that their father had brothers and half brothers and a sister, and that the names of their father and his brothers, half brothers and sister corresponded with the names of those of deceased, so far as he had given their names, and that the name of their paternal grandfather corresponded with the name of the father of deceased, as given by himself; and it further appearing that the claimants were the sole surviving descendants of their father, and that all of his brothers, sisters and half brothers were dead, and had no descendants surviving: *Held,* this was sufficiently satisfactory evidence of the heirship of the claimants.

3. BARGAIN AND SALE OF LAND. A verbal contract made by the owner of land with the father of an infant eighteen months old, that he will give all his land to such infant in consideration of the surrender of such infant by the father to him, to be raised by him as his own child, does not constitute a bargain and sale of the land.

4. Such a state of facts might, under some circumstances, raise an equity which a court of equity, upon proper proofs, would carry out and enforce.

416      CUDDY v. BROWN *et al.*      [Sept. T.

Opinion of the Court.

5. SAME—*possession.* If an infant, eighteen months of age, is taken into the family of the owner of land, under a verbal agreement between the father of the infant and the owner of the land, that the infant was to live with and be raised by such owner as his child, and that the owner was to give all his land to such child in consideration thereof, and such infant continued so to live with the owner until his death, this would not constitute possession of the land by such infant.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. BENJ. OLIN, and Mr. EGBERT PHELPS, for the appellant.

Messrs. HILL & DIBBELL, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This record shows that one Michael Karney, at the January term, 1873, of the Will circuit court, exhibited his bill for the partition of certain lands situate in that county, between himself and the heirs of John Brown, deceased, to which his widow, Alice Brown, was made a defendant, and unknown heirs, residing in a foreign country, also made defendants, the deceased, Brown, dying without issue. It is also alleged that the widow has conveyed some interest in the land to James Cuddy, who is also made a defendant to the bill of complaint. It is further alleged, a parol partition of the lands was made between complainant and Brown, at the time of the purchase thereof, and that they were held, occupied and enjoyed according to this partition, up to the decease of Brown. The bill prayed that partition be made according to the parol agreement, and that the master in chancery execute a deed to complainant for his portion, as described in the bill of complaint.

The defendants were duly notified to appear, by service of subpœna and by publication, and the widow, Alice Brown, and James Cuddy, at the same January term, filed their joint and several answer to the bill of complaint, admitting the

parol partition and possession under it.    Alice Brown admits making a conveyance to Cuddy for all the land partitioned to her husband, and that Cuddy is in possession thereof, and that the master in chancery convey the same to him, Cuddy.

At the January term, 1874, James Brown, John Brown and Jane Weldon filed their joint and several answer, in which they aver that they are the sole heirs at law of John Brown, deceased, and are entitled to one half of the lands, admitting the right of the widow to one half.

There were cross-bills, and answers to cross-bills, in one of which, filed by appellees, they deny any consideration for the alleged promise by the deceased Brown to appellant, and set up the Statute of Frauds and Perjuries, and ask for an account of rents and profits of the land, and that the land may be partitioned between them according to their respective rights and interests.

The cause was heard on the bill, answer and replications, and cross-bills and answers thereto, and replications and proofs.

The court found the parol partition to have been made as set forth in the original bill, and finds that Alice is the widow, and the defendants, James Brown, John Brown and Jane Weldon, are the heirs at law of John Brown, deceased, and that, at his death, they became seized in fee, each of an undivided one-sixth of his real estate, and entitled to partition thereof; that the widow, Alice, became seized of one-half his estate, and that she quit-claimed to James Cuddy, who is still seized in fee of her interest; that, for some years, Cuddy has had the rents, issues and profits of all of the real estate, and paid taxes and made improvements thereon; and it was decreed that the parol partition be confirmed and that partition be made of John Brown's interest, one-half to Cuddy and one-half to James and John Brown and Jane Weldon, and commissioners appointed to make partition, and the cause referred to the master in chancery to take an account of rents,

issues and profits, dismissing the cross-bill of James Cuddy with costs, and apportioning other costs. ·

To reverse this decree, Cuddy appeals, and makes the points: *First.* That the decree should have passed in his favor for the whole of the real estate of John Brown; and, *second*, the finding that appellees were the heirs at law of the deceased Brown, was against the law and the evidence.

These are the only points we have deemed it necessary to consider, for upon them the whole merits rest.

Upon the second point first: Is the fact sufficiently established, that appellees are the heirs at law of the deceased John Brown? This is a question of pedigree, in which hearsay testimony is admissible. Much evidence was introduced on the point. The principal witness was one of the appellees, James Brown, supplemented by the testimony of the widow of John Brown, who proves declarations of her deceased husband; Hugh Ward, an intimate friend of the deceased, from the same county in Ireland, Cavan; Michael Kaveny, an acquaintance of thirty years, and whom the deceased followed from the State of Massachusetts to this State, and Charles Kaveny, a nephew of Michael.

From this testimony, it appears there was living in the town of Lisagona, near Muff, in the vicinity of King's Court, county Cavan, Ireland, one Andrew Brown, who had four sons—John and Joseph by his first wife, Thomas and Andrew, and a daughter, Mary, by a second wife; that John left his native home more than forty years ago, and, by common report in the family, went first to England, where he married his wife, Alice, now his widow and a party to these proceedings, where he remained seven years or more, and then came to Canada, then to Massachusetts, then followed Michael Kaveny from that State to this, where he lived until his death; that the family in Ireland never heard from him until after his death; that his father and mother are dead; that the half brothers, Thomas and Andrew, and half sister, Mary, are dead, leaving no issue living, and that appellees, James and

John Brown and Jane Weldon, are the only surviving children of his full brother, Joseph, long since deceased.

The facts testified to by these witnesses all conspire to establish the identity of these appellees as the only surviving children of Joseph Brown, and that he was the full brother of the deceased John Brown. They raise, at any rate, a very strong presumption of that fact, and which is not rebutted by any circumstance developed in the case.

It is true, as urged, the name, John Brown, is not an uncommon designation, but it is not claimed here, there was any other John Brown in Cavan, who had a father named Andrew, and brothers and sisters bearing the names mentioned by the witnesses.

We think the proof of heirship of these appellees sufficiently convincing and satisfactory.

Upon the first point, appellant contends there was a regular bargain and sale of all the lands of the deceased, John Brown, to appellant, made by his father with Brown, the consideration being the surrender of appellant to him when eighteen months old, to live with him and be raised by him as his child.

No court, we believe, has ever held such facts establish a contract of bargain and sale. The most that may be predicated on them is, they may raise an equity which, under proper proofs, a court of equity will carry out and enforce. Such proofs have not been furnished in this case, and, from its nature, could not be furnished. No case has been cited, nor does any occur to us, where such a promise has been enforced. A parent may promise a son, if he will remain with him until he is thirty years of age, he shall have all his property. The son remains, is supported by his father, and at the same time rendering such services as he is able to render, and the father makes his last will and testament in favor of other children. Would it be claimed the son to whom the promise was made, could, in equity, make out of these facts such a contract as a court of equity would enforce? We appre-

hend not. The remedy would be assumpsit, for the value of the services rendered after he had reached the age of manhood, after deducting the cost of his maintenance. There is no just pretense here was a sale.

Appellant further contends, if the contract was in parol, he has shown sufficient to take the case out of the operation of the statute, in this, that he has shown a taking possession of the lands on the faith of the promise, and making lasting and valuable improvements thereon.

It can hardly be said, when appellant, then an infant eighteen months old, was taken by Brown into his family, after this alleged promise to appellant's father, that appellant, on entering Brown's household at that tender age, and under the circumstances proved, did so under the contract and with the intention then and there of taking possession of all his real estate; and that this possession continued up to the death of Brown, at which time appellant was twelve or thirteen years old. The idea is too absurd to need serious refutation. Appellant never, at any time during the lifetime of Brown, had any possession of these lands, or of any portion of them. He was on them as the child and servant of the owner, in a state of pupilage, having no right to exercise any will of his own over the property. Nor did he, during the lifetime of Brown, or at any other time, make any improvements upon the land, in the capacity or character of owner, present or prospective, or pay any taxes thereon, or enjoy the rents and profits, until after the death of Brown and the execution of the conveyance by the widow to him. By law, there being no child, or descendant of a child, the widow inherited one-half of the real estate of which her husband was seized in his lifetime, and was entitled to dower in the remaining half.

Her moiety thus inherited, she had a right to convey to appellant, and the circuit court measured and decreed to him his precise interest, and no more. None of the cases cited by appellant, decided by this and other courts, are in any respect like this.

Appellant did not control the farm after the death of Brown, and before 1872, when the deed was executed by the widow. The widow had complete control, paid the taxes and received the rents and profits, appellant being in no other position than that of a child or servant. He was only twelve years old at Brown's death.

We fail to find any evidence to establish the alleged contract as a binding contract, and the Statute of Frauds and Perjuries was well pleaded, and nothing is shown to take the case out of its operation.

It has been often held by this court, that applications for the specific performance of contracts for the sale of land, are addressed to the sound legal discretion of the court. And it has been often held, that where parol contracts are made on a valuable consideration, and the whole or a considerable part of the purchase money paid, possession taken, and valuable improvements made, all under the contract, and there be no hardship in it, such contracts will be enforced. This pretended contract lacks most of these elements. Appellant's services, from eighteen months old to the age of twelve, were no more valuable than the cost and expenses of his support and nurture. No possession was taken under the contract, and no valuable improvements made by him on the land under the contract. The pretences are unfounded, and no equity exists in appellant's favor, that we can discover.

Whatever error the circuit court may have committed, and we do not say there is any in regard to Mrs. Brown's interest in the land, whether of dower or homestead, appellant can not complain. It is for her to protect her own rights.

We are satisfied the decree of the circuit court, so far as appellant is concerned, was right, and it must be affirmed.

*Decree affirmed.*