LEWELLEN WISE ET AL. v. H. H. WYNN.

1. EVIDENCE.   Hearsay.   Pedigree.

Declarations of a deceased person that he has a brother, without other
proof of relationship, are inadmissible to enable his heirs to inherit
from the brother, but are competent to establish the right of his
brother's heirs to take from him.

2. SAME.   Declarations.   Place.

Such deceased person's statements as to the place where his brother
lived are admissible in evidence on a question of pedigree, not to give
any right by reason of the place, but merely to identify the person or
family.

APPEAL from the Circuit Court of Holmes County.

Hon. C. H. CAMPBELL, Judge.

T. K. Weisiger, for the appellants.

1. The exception to the rule which excludes hearsay testi-
mony in favor of the declarations of deceased members of a
family made *ante litem motam* as to pedigree is well recognized,
and under it the declarations are evidence of the facts.   2
Starkie Evid. 1099.   This principle has been recognized in some
of the earliest decisions of the courts of Virginia.   *Jenkins* v.
*Tom*, 1 Wash. 123 ;   *Claiborne* v. *Parrish*, 2 Wash. 146 ;
*Shelton* v. *Barbour*, 2 Wash. 64 ; *Pegram* v. *Isabell*, 2 Hen. &
Mun. 193 ; *Gregory* v. *Baugh*, 4 Rand. 611 ; Peake Evid. 11.
It is believed that the principle has been uniformly acted on
in the State courts and in the courts of the United States.
All the conditions necessary to make such declarations admis-
sible exist in this case.

2. Place can be proved by this character of evidence as a
means of identifying the family, but not as an independent
fact.   *Mima Queen* v. *Hepburn*, 7 Cranch, 290 ; *Davis* v.
*Wood*, 1 Wheat. 6 ; *Shields* v. *Boucher*, 1 De G. & Sm. 40 ;
*Adie* v. *Commonwealth*, 25 Gratt. 712 ; *Cuddy* v. *Brown*, 78
Ill. 415 ; *Moffit* v. *Witherspoon*, 10 Ired. 185.   The proof that
Charles Wise had a brother named Thomas would be unavail-
ing by itself.   That brother must be identified in some way,
and the identification becomes a necessary part of the proof of
pedigree.   This identification may be by proof of locality or

place of residence, or description of the person, or in other ways. The declarations, then, as to the place of residence, tending to prove identity, constitute a part of the proof of pedigree. The English cases admit hearsay declarations to establish such facts as constitute proof of pedigree. *Doe* v. *Pembroke*, 11 East, 504 ; *Zouch* v. *Waters*, 12 Vin. Abr. 244. It has been laid down in some of the American cases that, while pedigree can be proved by declarations of deceased persons, no other specific fact can be so proved; but it will be found upon examination that the specific facts referred to were independent of the question of pedigree.

*J. E. Gwin*, on the same side.

Declarations like these are admissible in questions of pedigree, in order to identify the person or family. Isolated facts are useless. Either the evidence is admissible in an intelligible shape, or it is wholly incompetent. Its competency is well recognized. *Spears* v. *Burton*, 31 Miss. 547 ; *Henderson* v. *Cargill*, 31 Miss. 367 ; 1 Greenl. Evid. § 104. The principle warrants the admission of declarations made by a deceased person as to where his family came from, where he came from, and of what place his father was designated. *Shields* v. *Boucher*, 1 De G. & Sm. 40. That such evidence as was here offered is admissible is clearly shown by the decisions of *Vaughan* v. *Phebe*, 17 Am. Dec. 770 ; *Chapman* v. *Chapman*, 7 Am. Dec. 277 ; *Birney* v. *Hann*, 13 Am. Dec. 167. The court admitted the isolated fact that Charles Wise said that " he had a brother Thomas." How futile it is to allow this to be proved without showing where this brother Thomas lived, so as to identify him as the person spoken of. Under the peculiar circumstances of this case it is impossible to discover the heirs of Charles Wise, unless his statement as to who his relations are is taken. If any one should die and be buried in a foreign land, how is it possible to know where he is from, who his relations are, or where they live, except from his own claim of kindred? Is it probable that a man would invent a falsehood to enable strangers to inherit his estate? Declarations against his interest, made by Charles Wise, without the possibility of benefiting children of his own, are admissible to establish the claim of his brother's heirs to his property.

*M. Green*, for the appellee.

1. All Charles Wise's declarations should have been excluded. Relationship could not be so proved. At the foundation of their competency lies the proposition that the declarant must be a relative, and this must be proved *dehors* the declarations. As said in *Monkton* v. *Attorney General*, 2 Russ. & Myl. 147: " I entirely agree, that, in order to admit hearsay evidence in pedigree, you must, by evidence *dehors* the delarations, connect the person making them with the family."

2. The law resorts to hearsay evidence in cases of pedigree, upon the ground of the relationship of the declarants with the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. 1 Greenl. Evid. § 103. The cases cited by opposing counsel are all English. The doctrine is uniformly upheld in the United States that declarations as to place are not part of the family knowledge of pedigree and are not admissible. *Wilmington* v. *Burlington*, 4 Pick. 174 ; *Hall* v. *Mayo*, 97 Mass. 416 ; *Adams* v. *Swansea*, 116 Mass. 591 ; *Londonderry* v. *Andover*, 28 Vt. 416 ; *State* v. *Watters*, 3 Ired. 455 ; *Campau* v. *Dewey*, 9 Mich. 381 ; *Carter* v. *Buchanan*, 9 Ga. 539 ; 1 Phil. Evid. 252, 253, note 93.

CHALMERS, J., delivered the opinion of the court.

More than forty years ago there came to Holmes County in this State a man calling himself Charles Wise. His parentage and past antecedents were wholly unknown, and except to a very few persons he seems to have preserved great reticence on these subjects. He lived in Holmes County continuously thereafter, until his death in 1870, and in the mean time accumulated a considerable landed estate. Dying intestate, unmarried, and without known heirs, his property after his death was by regular proceedings escheated to the State, and from the State subsequently purchased by the appellee, Wynn. Within the time limited by our statutes (Code 1880, § 892), this action has been brought for the recovery of the property by those who claim to be the heirs-at-law of the decedent.

They prove that they are the children of Thomas Wise, deceased, formerly a resident of a place known as " Hell's

Corner," in Amelia County, Virginia, where the corners of three counties come together ; that nearly fifty years ago their father had a younger brother named Charles, who having seduced a young lady of respectable family, fled the country to escape the vengeance of her relatives, and announced at the time, to an intimate friend, that he expected to go to Texas or Mississippi, and that he should take care that no one in Virginia should ever discover the place of his future home. The friend to whom this statement was made is still alive, and these facts are established by his testimony. From that time forth, until within a short time before the bringing of this suit, nothing was ever heard in Virginia of the subsequent career of Charles Wise. Having made this proof, the plaintiffs proposed to prove by two witnesses, living in Holmes County, that the man known there as Charles Wise, and whose estate is involved in this litigation, told them that he came from a place in Virginia known as " Hell's Corner," where the corners of three counties came together, that he had there a brother named Thomas, and that he had left there because of some trouble about a woman. The whole of this proffered testimony was excluded by the court below, except the isolated statement of the deceased that he had a brother named Thomas, the witnesses not even being allowed to state that the deceased had said that his brother Thomas lived in Virginia, or that he himself came from that State.

This ruling of the learned judge was based upon the *dicta* of many authorities to the effect, that while in questions of pedigree the hearsay declarations of a deceased member of a family are receivable in evidence, as to all matters of birth, death, age, marriage, and the like, declarations as to place are not. The later and better considered cases, however, repudiate this distinction between declarations as to place and those touching other family matters, where the inquiry is strictly one of pedigree, and the declarations as to place are not relied on as giving any right by reason of the place, but proof as to place is made merely by way of identification of the person or family. Thus, in a question of settlement under the poor laws, where the right of settlement is dependent upon the place of present or former residence, hearsay declarations as

to place are inadmissible; but where the question is purely
one of pedigree, and the effort is to identify the particular
person or family about whom the declarant was speaking,
declarations as to place stand upon the same footing as any
others relative to matters of family history.   Wharton Evid.
§ 208, and cases cited.   Manifestly this is the true rule here.
There can be no reason founded in good sense for admitting
the declarations of a deceased person that he has a brother
named Thomas, and excluding his statement of where that
brother lives.   The name wholly fails to identify without
identification of the place, and the one is worthless without
the other.   If the court below was correct in admitting any
of the declarations of Charles Wise touching his family, it
should have admitted them all, since they all tended to estab-
lish his own identity, and were proffered not for the purpose
of basing any particular right on the place of his alleged na-
tivity, but solely for the purpose of showing who he was, and
to what family he belonged.

But was it admissible to show this by his own statements,
without some proof outside of his own declarations connecting
him with the family of which he claimed to be a member?
The general rule undoubtedly is, that before hearsay decla-
rations in matters of pedigree can be introduced in evidence,
some proof *dehors* the declarations must be made that the
declarant was in fact a member of the family about which
he was speaking.   It was unanimously so ruled by all the
judges in *The Banbury Peerage Case*, 2 Selwyn N. P. 764,
where the petitioner sought to introduce in evidence the state-
ments and depositions contained in a chancery litigation con-
ducted more than one hundred and fifty years before, in which
an ancestor of the petitioner styled himself, and was styled by
those who professed to belong to the family, the legitimate son
of A. B.   It was held that such statements were not admissi-
ble, though upon a question of pedigree, until it could be
shown by proof *aliunde* that those making these statements
actually were members of the family as to which the claim
was preferred.   The same doctrine is announced in *Monkton*
v. *Attorney General*, 2 Russ. & Myl. 147, though it may
perhaps be doubted whether the conclusion reached in that

case does not offend against the doctrine. But in these and many other cases of a similar character, which might be cited, the attempt was to set up some right derived through the declarant, and to establish that right by his own statements as to the pedigree of the family of which he claimed to be a member. It seems manifest that this cannot be done without precedent proof from other sources that he is what he claims to be, to wit, a member of the family. Thus, if Charles Wise had married here and left children, it is clear that those children could not have claimed any interest in the estate of Thomas Wise, in Virginia, by virtue alone of their father's statement that Thomas was his brother. But how is it when the case is reversed, and a plaintiff is seeking to reach the estate of the declarant by evidence of what he said with reference to his family and kindred? It is quite clear that I cannot establish my right to share in the estate of A. by proof alone of the fact that my father declared in his lifetime that A. was his brother, but may I not do so by showing that A. himself so declared? Upon this question we find a singular dearth of authorities. In *Adie* v. *Commonwealth*, 25 Gratt. 712, a case strikingly like this in all its features, testimony of this character seems to have been admitted without objection, and so also in *Cuddy* v. *Brown*, 78 Ill. 415. In *Moffit* v. *Witherspoon*, 10 Ired. 185, persons who claimed to be the nephews and nieces of Mrs. Donahoe, in an ejectment suit brought after her death to recover certain real estate belonging to her during her life, were permitted to prove that she had declared, many years before her death, that the mother of the plaintiffs was her only sister, and no other proof of heirship than this seems to have been offered. In *Shields* v. *Boucher*, 1 De G. & Sm. 40 (a case to which we have not had access, but which is referred to at length in Wharton Evid. § 208, note 4), Sir Knight Bruce expressed the strong conviction that in a controversy purely genealogical declarations made by a deceased person, as to where he or his family came from, of what place his father was designated, and what occupation he followed, would be admissible, and might be most material evidence for the purpose of identifying and individualizing the person and family under discussion.

Independently of these or of any authorities, we think *ex necessitate rei* and as a matter of common sense, that declarations such as were offered here and under the circumstances here existing, should always be received in evidence. They stand to some extent upon the footing of declarations against interest, or of what Mr. Wharton calls "self-disserving declarations." If they be not admitted, there must be in many cases a failure of justice. No man who knew Charles Wise in Virginia ever saw him here, and no man who knew him here ever saw him in Virginia; and if we reject his own statements as to who he was, and whence he came, these inquiries must remain forever unanswered. If such be the rule of law, it must be impossible legally to establish the identity of very many travellers who die among strangers in distant lands, although in point of fact there may not be in any man's mind the slightest doubt as to who they were.

*Reversed and remanded.*