LEONNETTA C. METHENY *et al.*

*v.*

CHARLES D. BOHN, by his next friend.

*Filed at Ottawa October 11, 1895—Rehearing denied March 13, 1896.*

1. EVIDENCE—*parental recognition of child raises presumption of parentage.*  The fact that one was brought up in the family of persons living together as husband and wife, as their offspring, and was recognized as their child by them and others, imposes the burden of disproving his right to inheritance upon persons attacking it and claiming to be the lawful heirs.

2. SAME—*what is admissible to prove pedigree.*  Hearsay evidence, tradition and declarations of parents who are deceased, are admissible in evidence upon questions of pedigree.

3. SAME—*mere neighborhood doubts and rumors are inadmissible on question of parentage.*  Evidence of doubts, rumors and the like among neighbors as to the paternity of a child when he appeared in a family, is inadmissible upon the question of his parentage.

4. SAME—*suspicions, doubts and rumors do not prove a "controversy" as to parentage.*  Suspicions, doubts and rumors among neighbors, of the paternity of a child in a family, do not rise to the dignity of a "controversy" as to his parentage which will exclude subsequent declarations of the father.

APPEAL from the Circuit Court of Carroll county; the Hon. JAMES SHAW, Judge, presiding.

J. A. CRAIN, for appellants :

What the several witnesses stated they had heard Samuel Bohn say, was hearsay evidence, which, as such,

is always excluded, except in a few instances, among which are questions of pedigree, as to which the declarations of the father may be given in evidence. 1 Greenleaf on Evidence, sec. 104.

All *ex parte* declarations, even though made upon oath, referring to a date after the beginning of the controversy, are rejected. 1 Greenleaf on Evidence, sec. 131.

Declarations made after the controversy has originated are excluded, even though the existence of the controversy was not known to the declarant. 1 Greenleaf on Evidence, sec. 133.

But even if such declarations are to stand, the light afforded by them is, at best, extremely feeble and far from being certain. 1 Greenleaf on Evidence, sec. 133.

From the earliest periods courts of equity have been vested with broad and comprehensive jurisdiction over the persons and property of infants. (*Cowls* v. *Cowls*, 3 Gilm. 435 ; *Grattan* v. *Grattan*, 18 Ill. 167 ; *King* v. *King*, 15 id. 187.) The power and duty of the courts in this regard are clearly shown in 2 Story's Eq. Jur. chap. 35.

The infant, although not under any general guardian appointed by the court, is treated as a ward of the court, and as being under its special cognizance and protection. *Ames* v. *Ames*, 148 Ill. 338.

O. F. WOODRUFF, W. H. A. RENNER, and GEORGE L. HOFFMAN, for appellee:

A child born in lawful wedlock is presumed to be the legitimate progeny of the parents thus living in marriage. *Blackburn* v. *Crawford*, 3 Wall. 175; *Cope* v. *Cope*, 1 M. & R. 269; *Morris* v. *Davies*, 3 C. & P. 534; *Dennison* v. *Page*, 29 Pa. St. 420; *King* v. *Inhabitants*, 5 A. & E. 180; *Mink* v. *State*, 60 Wis. 583.

The only mode of disproving the presumption of legitimacy thus raised is by proof that the parents were not married before the birth of the child. *Rainham* v. *Canton*, 3 Pick. 293; *Stanton* v. *Edwards*, 1 Ves. Jr. 133; *The King* v.

*Bramley,* 6 T. R. 330; *Haddock* v. *Railway Co.* 85 Mass. 298; *Whitman* v. *State,* 34 Ind. 360; *Land Co.* v. *Bonner,* 75 Ill. 315.

The testimony of the father and mother as to the legitimacy of a child born to them in wedlock is admissible, and if they are dead, their declarations showing such legitimacy are admissible.   *Goodright* v. *Moss,* Cowp. 591.

Declarations, which are secondary evidence, are sometimes received in consequence of the death of the person making them,—whether they were made at the time of the fact declared, or at a subsequent day,—when it is shown he possessed competent knowledge of the facts or that it was his duty to know them, and that the declarations were at variance with his interests.   Greenleaf on Evidence, secs. 147, 148; *People* v. *Blakely,* 4 Park. Cr. 184; *County of Mahaska* v. *Ingalls,* 16 Iowa, 93; *Scott County* v. *Fluke,* 34 id. 317.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Complainant filed his bill for partition of certain real estate of and the assignment of dower to the widow in the estate of Samuel Bohn, the intestate from whom the land descended.   Leonnetta C. Metheny and husband, and Lucinda Bohn, the widow, are made defendants.   No controversy arises on the pleadings, nor in the ownership of the land alleged to be owned by the intestate, Samuel Bohn, nor the rights of the widow to dower.   The contention is, whether the complainant is the child and heir-at-law of Lucinda Bohn and Samuel Bohn.   The bill alleges that Samuel Bohn died November 12, 1891, leaving surviving Lucinda Bohn, his widow, Charles D. Bohn, his son, (the complainant,) and Leonnetta C. Metheny, his daughter by adoption, (one of the defendants,) as his sole heirs-at-law, and at the time of his death was seized and in possession of the lands in the bill described.   The answer of Leonnetta C. Metheny, by her guardian *ad litem,* denies that Charles D. Bohn was

or is the legitimate son or heir-at-law of Samuel Bohn, deceased, and denies he became seized of said lands as such heir, as in the bill alleged. Samuel Metheny, the husband of Leonnetta, in his answer sets up the same allegations as are set up in her answer. Replication was filed. Depositions of witnesses were submitted on hearing, and numerous witnesses examined orally. We will not take up and analyze the testimony of each witness, but will discuss the nature of the evidence in general terms.

It is alleged by appellants that as the complainant filed this bill for partition against the defendant Leonnetta C. Metheny, who is a minor, the burden of proof is upon him to make out and prove his case on the point of his heirship by a preponderance of the evidence. The complainant was a minor, and, as is abundantly shown by competent testimony, was brought up in the family of Samuel Bohn and Lucinda Bohn as their lawful offspring, they living together as husband and wife. He was always treated and recognized as their child by them and others. This affords *prima facie* evidence of his parentage and right to inherit, and the burden of disproving parentage and right to inherit is thus cast upon defendants. (*Illinois Land and Loan Co.* v. *Bonner,* 75 Ill. 315.) Of certain exceptions in which hearsay evidence is admissible the question of pedigree is one. Tradition is proper evidence in such case, as are also the declarations of parents who are deceased. *Goodright* v. *Moss,* Cowp. 591; *The Berkley Peerage case,* 4 Camp. 418; *Jackson* v. *Browner,* 18 Johns. 37; *Cuddy* v. *Brown,* 78 Ill. 415; *Harland* v. *Eastman,* 107 id. 535.

Counsel for appellants does not seek to contradict this proposition, but urges that if a controversy had arisen, in the lifetime of Samuel Bohn, as to Charles D. being a son and heir of said Samuel, then the declarations of the father could not be received when referring to a date subsequent to the beginning of the controversy. The general rule is, that declarations made after a con-

troversy originates are excluded. By the term "contro-
versy," as thus used, are not meant mere idle rumors, or
doubts of curious scandal-mongers whose discussion of
the family matters of their neighbors is made without
reverence for sanctity, morality, privacy or religion. At
the time of the appearance of Charles D. Bohn, the
father, Samuel Bohn, was about sixty-three years of age,
and the mother, Lucinda, was about forty-nine. They
had previously adopted a daughter and had proposed to
adopt a son. They had taken a male infant from a found-
ling asylum with such purpose in view in September
previous, and after retaining it for some three weeks
returned it to the asylum. Certain neighbors who were
not taken into the confidence of the family seemed to
doubt the paternity of the child, Charles D., when he ap-
peared. Appellants' counsel sought to show these doubts,
rumors, etc., which sprang up with the appearance of the
infant, which evidence was excluded by the court. That
evidence was not admissible, and such suspicions, doubts
and rumors do not rise to the dignity of a controversy
that would exclude declarations made thereafter by the
father. Idle speculations of those whose curiosity may
be aroused as to the possible paternity of a child cannot
make an issue as to legitimacy or heirship, nor furnish a
basis of an evidentiary fact that requires disproval or
affects the question of the burden of proof. This being
a chancery cause, the inquiry here is whether or not the
competent evidence in the record, taken in connection
with the pleadings, sustains the decree that was entered.
*Sawyer* v. *Campbell*, 130 Ill. 186.

The testimony of the physician who examined and pre-
scribed for Lucinda Bohn, mother of complainant, for a
time preceding complainant's birth, and who occasion-
ally saw the mother at a few rods distance during the
three months prior to complainant's birth as well as sub-
sequently thereto, is in this record, with the testimony of
witnesses who knew and observed Mrs. Bohn prior to the

23d of February, 1883.. This testimony is to the effect that Mrs. Bohn had the appearance of pregnancy. The testimony of several witnesses who saw Mrs. Bohn within two weeks following the said 23d of February was, that when they saw her she was in bed with the appearance of illness, and the child was with her with the appearance of a recently born infant. The evidence shows that on the morning following the appearance of the infant, the father, Samuel Bohn, stated to many different persons that a son was born to him, and it further appears that on frequent occasions in conversation with friends, in the home circle, and on all occasions and wherever he was, when he had occasion to speak of Charles D. he spoke of him as his son,—as his heir,—and hoped he (the father) would live long enough to give him a good education, and expressed the utmost pride and affection for the child. Samuel Bohn for more than eight years thus spoke of and evidenced affection for his son. He spoke of his children, saying he had an adopted daughter and a son,—his own son. With a right of disposition of his property by will it is difficult to conceive a purpose or motive for such declarations and expressions if they were untrue. It is incomprehensible, when all the facts are considered, that such declarations were untrue. That falsehood, deception and feigned affection were indulged in by Samuel Bohn for years, without motive, necessity or reason, must be found if the claims of appellants are sustained. The deduction can be fairly drawn from this evidence that Samuel Bohn was a man of probity and morality, and as applicable here we cite *Gaines* v. *New Orleans*, 6 Wall. 642, where the court said, in passing on a somewhat similar question: "The inquiry naturally arises, what motive had he to declare his child legitimate if he knew the facts were otherwise? He was a man of superior intelligence and long residence in Louisiana, and necessarily knew by the laws of the State he could secure to his child enough of his property to make her

rich if she was illegitimate. It is inconceivable that such a man would risk a declaration of legitimacy which he knew to be false, and thus jeopard the estate which he insisted with so much confidence he had secured to his child, and in the security of which he said 'he would die contented.'"

Lucinda Bohn testifies the child, Charles D. Bohn, was born to her on the 23d day of February, 1883, and at the time her husband, Samuel Bohn, and a woman servant, were present, and that she cared for and raised the child. Her testimony is explicit and positive. Its correctness is sought to be challenged by reason of the fact that when she applied for letters of administration on the estate of her deceased husband she stated the heir to be an adopted daughter and omitted the name of the son. She explains that fact by testifying she was informed by Samuel Metheny, the husband of the adopted daughter, that if she stated in her petition that Charles D. Bohn was an heir, certain attorneys he named would send her to the penitentiary, and that she omitted his name from the petition through fear. On reading this evidence a chancellor would have little hesitancy in finding as a fact that Lucinda Bohn was a woman somewhat ignorant; that she was one in whom fear could be readily aroused and who would be influenced by such fear, and that a declaration made to her might be easily misunderstood. The making of such statement is denied by Metheny.

As against the case thus made by the complainant, the defendants called as a witness a physician and surgeon, who, according to his testimony, had graduated from several medical colleges, and whilst engaged in practice in 1882, and prior thereto, had made diseases of women a specialty. During about six months of the year he was engaged in an itinerary practice, visiting various towns and cities and staying about a week at a place, and, as testified to by him in chief, had from seventy-five to one hundred patients a week, and as stated on cross-examina-

tion, had from one hundred to one hundred and fifty cases a week. He states that in November, 1882, Lucinda Bohn called on him in the city of Lanark, where he made an examination of her, she being "disrobed" for the purpose; that he used instruments in that examination after the ballottement test, and at the time of that examination Mrs. Bohn was not pregnant. Mrs. Bohn denies she was undressed or an examination made or an instrument used as stated, but says she called to procure medicine for stomach troubles, which was furnished, as she testifies. A memorandum made by that physician and surgeon in a book at the time does not indicate an examination of the character stated by the physician, but does indicate the administration of powders for a disease of the female organs and for bad liver and blood. Certain witnesses testified they called on Mrs. Bohn a few days after the appearance of Charles D., and found her up, dressed in a tight dress, with no appearance of illness.

Leonnetta C. Metheny, one of the defendants, was born October 5, 1876, and first saw Charles D. early on the morning of February 23, 1883. She testifies that on the latter morning she was called up when it was yet dark and shown the child. She also testifies to statements made by the servant and Mrs. Bohn, and to the appearance of a visitor the next morning, who, when seen by the servant approaching the house, was by that servant taken into the house through the kitchen by direction of Mrs. Bohn, who had quickly seized some bed clothing and lain down on the lounge, covering herself, and the conversation of Mrs. Bohn and the visitor is detailed. Similar conduct on the part of Mrs. Bohn, and other conversations, are also detailed and testified to by Leonnetta. She further relates incidents in reference to the child and conversations about it. When it is remembered that Leonnetta at that time was less than six years and five months old, her wonderful recollection and exceeding precocity excite surprise. As a trait of character at that early age it is

only surpassed by the suspicion and want of sympathy and affection which are evidenced towards the "only mother she ever knew" and the only father who showered kindnesses on her, whose child she seeks to have disinherited of its interest in an estate of about $40,000. According to her testimony Charles D. is not an heir of her adopted father, notwithstanding that father, who brought up Charles D. as his legitimate son and for about eight years so recognized him, made daily assertions of his legitimacy and right to inherit.

In addition to the foregoing testimony a physician and surgeon was called as an expert by the defendants, whose testimony was given after reading the deposition of the physician called by complainant. His testimony was to the effect that from the facts detailed a physician had not sufficient data to testify positively that at the time alluded to Mrs. Bohn was pregnant, but in answer to a hypothetical question admitted the symptoms detailed would indicate that condition, but still claimed a physician could not swear positively to that fact. A physician and surgeon was called by the complainant as an expert, and with reference to the testimony of the physician and surgeon called by the defendants on the examination he claimed that the ballottement test would not be conclusive because it was not properly made, and the use of an instrument, as stated by that witness, was not inconsistent with Mrs. Bohn's condition being as stated by complainant's witnesses. That a disagreement exists between these physicians and surgeons on a particular case, when called as experts on opposing sides, does not excite surprise. We will not attempt to analyze their evidence and conclusions.

From the whole evidence the decree should be affirmed.

*Decree affirmed.*