## MALONE v. ADAMS.

1. It is, on the trial of an issue of devisavit vel non, competent for a caveatrix to support a contention that she was the next of kin of the decedent by proving declarations to that effect made by the latter while in life. This case is distinguishable from that of *Greene* v. *Almand*, 111 Ga. 735.
2. The instructions with respect to undue influence were not unwarranted, and the finding of the jury was sufficiently supported by testimony.

Argued June 4,—Decided July 18, 1901.

Probate of will — appeal. Before Judge Lumpkin. Fulton superior court. December 22, 1900.

*R. J. Jordan,* for plaintiff in error.

*Arnold & Arnold* and *Abbott & Abbott,* contra.

Lumpkin, P. J. A paper purporting to be the last will and testament of Mattie Adams, deceased, was offered for probate by T. H.

Malone as executor. By this instrument the greater part of the property therein mentioned was given to one Lizzie Reed, who was not related to the alleged testatrix. A caveat was filed by one Mattie Adams, who claimed to be the niece and only heir at law of the decedent. The grounds of the caveat were, that at the time of the execution of the paper she did not have sufficient mental capacity to make a will, and that the execution of the paper offered for probate was procured by undue influence and duress practiced upon the decedent by the subscribing witnesses and by Lizzie Reed, the beneficiary therein named. The trial of the case on appeal resulted in a verdict finding that the paper in question was not the will of the decedent. The propounder moved for a new trial, which was denied him, and he excepted. The controlling question presented by his motion for a new trial was whether or not certain declarations of the decedent, to the effect that she was related by blood to the caveatrix, were admissible in evidence, the ruling of his honor of the trial bench being that they were. Such other points as are presented for our determination will be very briefly referred to after disposing of this question.

1. The substance of the declarations of the decedent which the court allowed to be proved was that the caveatrix was her niece. It was insisted that under the ruling of this court in *Greene* v. *Almand*, 111 *Ga*. 735, these declarations were inadmissible. It was in that case held that: "Sayings of a deceased person can not be rendered competent evidence on a question of pedigree by merely proving that such person said he was a kinsman or relative of the person whose pedigree is the subject-matter of the inquiry. The fact of relationship must be shown by other evidence." The question now in hand is altogether different. There was no attempt to prove that any deceased person, while in life, had declared that he or she was related by blood or marriage to Mattie Adams, the deceased, and, upon the strength of such a declaration, to introduce another and additional declaration to the effect that there also existed a relationship between her and the living Mattie Adams. The declarations sought to be proved in the present case were those of the alleged testatrix whose estate was in controversy. While she was not, of course, related to herself by blood or marriage, she certainly was a member of the family of individuals with whom she was connected by blood or affinity, and no proof

was required to establish the fact that she was a member of that particular family. We are, therefore, of the opinion that the evidence as to her declarations was admissible under section 5177 of the Civil Code, which reads as follows: "Pedigree, including descent, relationship, birth, marriage, and death, may be proved either by the declarations of deceased persons related by blood or marriage, or by general repute in the family, or by genealogies, inscriptions, 'family trees,' and similar evidence."

A case peculiarly in point is that of Wise v. Winn, 59 Miss. 590. One Charles Wise, who had lived in Mississippi for forty years and whose antecedents were entirely unknown, died intestate. His supposed heirs at law proved that they were the children of one Thomas Wise, of a named town in Amelia county, Va.; that their father had a younger brother Charles, who left that State forty years previously, and that nothing had been heard of him since. They then sought to introduce the testimony of two witnesses to the effect that Charles Wise, whose estate was in question, had told them that he had a brother Thomas, who lived in the town above mentioned, and that he himself had lived there. The court held that these declarations were admissible. Judge Chalmers, who delivered the opinion in that case, discusses the question so clearly and so forcibly that we can not attempt to better express our views in regard thereto than by quoting and adopting as our own the following admirable presentation by him of the law on the subject: "The general rule undoubtedly is, that before hearsay declarations in matters of pedigree can be introduced in evidence, some proof dehors the declarations must be made that the declarant was in fact a member of the family about which he was speaking. It was unanimously so ruled by all the judges in the Banbury Peerage Case, 2 Selwyn N. P. 764, where the petitioner sought to introduce in evidence the statements and depositions contained in a chancery litigation conducted more than one hundred and fifty years before, in which an ancestor of the petitioner styled himself, and was styled by those who professed to belong to the family, the legitimate son of A. B. It was held that such statements were not admissible, though upon a question of pedigree, until it could be shown by proof aliunde that those making these statements actually were members of the family as to which the claim was preferred. The same doctrine is announced in Monkton v. Attorney General, 2 Russ. &

Myl. 147, though it may perhaps be doubted whether the conclusion reached in that case does not offend against the doctrine. But in these and many other cases of a similar character which might be cited, the attempt was to set up some right derived through the declarant, and to establish that right by his own statements as to the pedigree of the family of which he claimed to be a member. It seems manifest that this can not be done without precedent proof from other sources that he is what he claims to be, to wit: a member of the family. Thus, if Charles Wise had married here and left children, it is clear that those children could not have claimed any interest in the estate of Thomas Wise, in Virginia, by virtue alone of their father's statement that Thomas was his brother. But how is it when the case is reversed, and a plaintiff is seeking to reach the estate of the declarant by evidence of what he said with reference to his family and kindred? It is quite clear that I can not establish my right to share in the estate of A. by proof alone of the fact that my father declared in his lifetime that A. was his brother; but may I not do so by showing that A. himself so declared? Upon this question we find a singular dearth of authorities. In Adie v. Commonwealth, 25 Gratt. 712, a case strikingly like this in all its features, testimony of this character seems to have been admitted without objection, and so, also, in Cuddy v. Brown, 78 Ill. 415. In Moffit v. Witherspoon, 10 Ired. 185, persons who claimed to be the nephews and nieces of Mrs. Donahoe, in an ejectment suit brought after her death to recover certain real estate belonging to her during her life, were permitted to prove that she had declared, many years before her death, that the mother of the plaintiffs was her only sister, and no other proof of heirship than this seems to have been offered. In Shields v. Boucher, 1 De G. & Sm. 40 (a case to which we have not had access, but which is referred to at length in Wharton, Evid. § 208, note 4), Sir Knight Bruce expressed the strong conviction that, in a controversy purely genealogical, declarations made by a deceased person, as to where he or his family came from, of what place his father was designated, and what occupation he followed, would be admissible, and might be most material evidence for the purpose of identifying and individualizing the person and family under discussion. Independently of these or of any authorities, we think, ex necessitate rei and as a matter of common sense, that declarations such as were offered here and

under the circumstances here existing, should always be received in evidence. They stand to some extent upon the footing of declarations against interest, or of what Mr. Wharton calls 'self-disserving declarations.' If they be not admitted, there must be in many cases a failure of justice. No man who knew Charles Wise in Virginia ever saw him here, and no man who knew him here ever saw him in Virginia; and if we reject his own statements as to who he was, and whence he came, these inquiries must remain forever unanswered. If such be the rule of law, it must be impossible legally to establish the identity of very many travellers who die among strangers in distant lands, although in point of fact there may not be in any man's mind the slightest doubt as to who they were."

2. It was further urged before us that there was not sufficient evidence at the trial below either to warrant any instructions with regard to undue influence, or to support a verdict that the testamentary paper was a result of such influence. An examination of the record satisfies us that these contentions are not meritorious.

*Judgment affirmed. All the Justices concurring.*