**Lorenzo DeGroff et al., Appellants, v. George Fred DeGroff, Appellee.**

**Gen. No. 7,946.**

Opinion
filed August 12, 1929. Rehearing denied October 10, 1929.

HALL & DUSHER, for appellants.

FRANK E. MAYNARD, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

This is a proceeding to determine the heirship of Myron DeGroff, deceased. George Fred DeGroff, hereinafter referred to as Fred, claims to be a blood brother of Myron, and his only heir at law. Myron, a son of David and Juliette DeGroff, was born in 1860, married and had one daughter. His father, mother, wife and daughter predeceased him.

A trial was had in the circuit court of Winnebago county by a court and jury; the jury returned a verdict finding George Fred DeGroff was a son and issue of David and Juliette DeGroff; judgment was rendered on the verdict and this appeal follows.

The record discloses that some time in the latter part of the year 1869, a woman took a two months' old baby to the Salisbury Hotel, in Beloit, Wisconsin, obtained a room, left the child asleep on a bed, while she went out, apparently to do some shopping, and did not return. There is nothing in the record disclosing the identity of the woman, or as to what became of her. About ten o'clock at night the baby woke up and began to cry, and the proprietor of the hotel took it to the home of a Mrs. Ida McKee, who had a child of about the same age. Mrs. McKee cared for the child, and

after a time the placing of the baby in an almshouse was considered. Some time after the child was left with Mrs. McKee, Juliette DeGroff appeared at her home and manifested considerable interest in the baby; she made a number of visits to the home of Mrs. McKee, accompanied by her husband, David DeGroff, but David remained in the buggy and did not go into the home of Mrs. McKee at any time. This situation obtained for about two months, when Juliette DeGroff, and her husband David, took the child and its clothing with them to their home in Winnebago county. They named him George Fred DeGroff, and raised him with their son Myron, who was at that time about 9 years old. Fred, as he was commonly called, was treated in all respects as though he was their natural son; they called him "our child," and "our boy." They gave him what education he received. He grew to manhood, married, left the farm of David, but resided in the same neighborhood. The evidence shows that he attended funerals of members of the family, and accompanied the mourners to the church and cemetery.

Myron DeGroff survived his parents, David and Juliette DeGroff, and after the death of Myron, Fred laid claim to being a brother of Myron, and it is in connection with the latter's estate that proof of heirship was attempted by Fred.

The record shows that Frank L. Colby, 71 years of age, a brother of Mrs. McKee, testified that he had lived in the home with his sister, Ida McKee, and his mother; that he remembered the night the baby was brought to their home; that his sister had a small baby about the size of the one brought there, and that she nursed the baby for five or six weeks; that later on he saw David and Juliette DeGroff come and get the baby; that on a certain occasion he was at the home of David and Juliette DeGroff, when Juliette brought the baby, Fred, out of the bedroom, washed and dressed

him, and said "What do you think of my youngest son?" Colby further testified that at a later time, after the death of David DeGroff, he stopped at the home of Juliette DeGroff, and was looking around the farm with Juliette, when she said to him, "I am fortunate in having my two sons to be with me and help me on the farm"; that both boys were dressed alike and treated alike; that he thought Myron was about 8 years old, and was a little larger than Fred. Colby's attention was called to the fact that Myron was 9 years older than Fred, and he then said that Myron might have been 10 or 11 years old at the time. David DeGroff died in 1908, and Fred was born sometime in the year 1869, so that, at the time of the death of David, Fred was at least 39 years of age. Fred testified that at the time of David's death he was a grown man and attended the funeral, accompanied by his two sons.

Ida M. Daniels, who lived in the neighborhood in which David and Juliette resided, testified that she visited back and forth with the DeGroffs; that on one occasion when Juliette was wheeling the baby in his cab, she walked along beside her, and said to Juliette that she had heard something about the baby, and said, "now Juliette, I want to know if this is your own baby," and Juliette said to her, "This is my own baby."

It is further shown that when Fred was a boy in school, the question of his parentage was raised by one of the boys in school. Fred told his alleged parents what had been said. David inquired as to who had made the suggestion as to his not being their son, and when Fred told him, David saw the school boy and admonished him not to do that any more, and remarked that Fred was their son.

David DeGroff died intestate, possessed of 40 acres of land in Winnebago county. Juliette DeGroff died intestate on December 7, 1912, possessed of another

40 acres of land in said county. The estate of David DeGroff was not settled until after the death of Juliette DeGroff. On October 17, 1914, in the estate of David DeGroff an order of heirship was entered by the county court of Winnebago county, finding that Juliette DeGroff was a widow, and that Myron was the sole and only heir of David; that on said last date an order declaring heirship was entered in the estate of Juliette DeGroff, finding that Myron was her son and only heir at law.

In 1892, Myron made application for a benefit certificate in the Modern Woodmen of America; he gave the ages of his father and mother, and in answer to the question, ''How many brothers have you?'' answered ''None.'' The application was identified by witnesses who knew the signature of Myron, including the physician who wrote down the answers in the witness' application.

The record further shows that Dr. Crockett, a witness who was not related in any way, testified that Fred was examined for life insurance before him, in May, 28 or 29 years ago; that he inquired of Fred as to whether or not his parents were living, and Fred said that he did not know; he was asked their ages, and said he did not know; he was asked the condition of their health, if living, and said he did not know. Fred denied the testimony given by Dr. Crockett. Dr. Crockett testified, however, that since the case had been pending, Fred had called on him to get him to act as a witness; he told Fred all he knew about it was what Fred had told him, and recited the testimony he later gave in the case, and, after doing so, Fred said he probably would not be of any use to him. Fred admitted that he had talked to the doctor, and admitted that he had said he guessed he would not do him any good. Fred also remembered making out the application for life insurance.

Mary Merchant testified that her mother was a sister-in-law of Juliette's; that she lived within ten rods of the residence of David and Juliette at the time Fred was brought to their home; that she was a niece of David's, and that the families were on good terms and visited frequently back and forth; that she was at the home of David and Juliette two or three times a day, and passed there as she went to and returned from school; that there was no baby in the home until the evening Fred was brought from Beloit; that she was about 14 years of age at that time; that the day before Juliette went to Beloit to bring the baby home, there was a conversation between her mother and Juliette in which Juliette said there was a nice little baby boy left at Beloit and she had a notion to go and get him, and bring him home and adopt him.

Lorenzo DeGroff, a brother of David's, testified that he was working on the DeGroff farm; that he lived three-quarters of a mile away; that he saw Juliette and David every day or two, and for years before Fred was brought into the home there had not been over two or three days that he did not see Juliette; that he frequently saw her every day or two, and for two or three months before the baby was brought to David's. He further testified that she was not sick within five months of the time the baby was brought to their home; that there was no sign of any baby around the house before they brought Fred there; that he was there the evening of the day they brought the baby from Beloit and heard David and Juliette say they got the baby at Ida Colby's who had been keeping it; that he saw them feeding the baby out of a bottle, almost every day.

Cora Krause testified that she heard a Mrs. King and Juliette talking, and they talked of the fact that Mrs. King had told Juliette there was a baby at Beloit to be given away; that they wanted to find a home for the baby; that Mrs. King was the first one to tell

Juliette about him; that they said a lady who worked at the hotel took the baby until they could find a home for it.

Nora Dohm testified that about the year 1898, or 1899, she heard Juliette say to her mother that she had never adopted Fred; that they intended many times to do so, but each time she was ready, David was never ready to go with her, and that was the reason no papers had been made out.

Delila Tiffany, a witness 80 years of age, testified that she had lived in the vicinity of Beloit for over 40 years; that she knew David and Juliette, and lived neighbor to them for many years; that Juliette visited her when Fred was a small baby, and told the witness that Fred came from a hotel in Beloit, which was at the time the testimony was given called the "Goodwin House"; that Juliette said they had adopted him.

In view of the facts as disclosed, it is the contention of appellants that the court was in error in instructing the jury that the burden was upon them to show that Fred was not a brother of Myron DeGroff. Appellee insists that by reason of the rule announced in *Metheny v. Bohn,* 160 Ill. 263, the burden was so cast upon the appellants.

The facts in the *Metheny* case are quite different from those in the case at bar. In the *Metheny* case the first known of the child was when he was apparently a new born babe, found in bed with a woman who claimed to be his mother, with a statement immediately after by the father that a son had been born to them. There was proof that the mother had apparently been pregnant; proof also that she was ill in bed with the child immediately after its birth. The alleged parents always claimed the child was an issue of the wife; it never was out of the household.

In the case at bar the proof shows that the first known of Fred was when he was two months old, left at a hotel by an unknown woman; that the baby was

taken care of by another woman for two months, and then taken to the home of the DeGroffs, but before it was taken there, there is evidence tending to show that Juliette told her sister-in-law there had been a baby left at the hotel, and that she wanted to take it and raise it, that she knew she could not bear any more children. There was also proof that Juliette had stated some years later that she had never adopted the child and gave as a reason that when she was ready, David never could get away.

The evidence in this case being so entirely dissimilar to that in the *Metheny* case, we are of the opinion that the rule in that case cannot be invoked here. The rule laid down in the *Metheny* case is where the child is first found in the home of husband and wife, and is thereafter treated and recognized as their child by them, and others. Such facts make a prima facie case of parentage and the right to inherit, and placed the burden of disapproving parentage and the right to inherit upon the party who contested his claim.

In the case under consideration it is not shown that the baby was taken to the hotel by Juliette; there is no evidence and the record does not contain a single statement or admission upon the part of Juliette that she was the woman who took the baby to the hotel in Beloit. There is no evidence that there was a baby at the home of David and Juliette during the period of two months before the child was taken to the hotel in Beloit. Furthermore, there is nothing in the evidence, upon which an inference can be based, that she was the one who took the child to the hotel; there is no evidence that she ever saw the child until he was two months old; she never had possession of him until after he was four months old.

The case of appellee necessarily rests upon the proof of the declarations made by the alleged parents that Fred was their son, and that they treated him as such. The declarations alone cannot give rise to the pre-

sumption of parentage and the right to inherit. When there is proof showing that the child was not first discovered with or near the mother but in the hands of some one else, the presumption contended for by appellee cannot be indulged in. It is insisted by appellee that since no motion was made at the close of the evidence to strike the same from the record, and to give a peremptory instruction, appellants are not in a position to argue that the verdict of the jury is contrary to the law and the evidence in the case. The contention of appellee in this respect is not well founded. The verdict of the jury was merely advisory, and the verdict of the jury being advisory only, the same rules cannot obtain as obtain in cases at law.

In our opinion the testimony, as disclosed in this record, is not sufficient to support the decretal order finding that Fred was a son of Juliette, and the only heir of Myron, and give him the right to inherit. We find as an ultimate fact to be incorporated in the decretal order that George Fred DeGroff is not the blood brother of Myron DeGroff, and remand the cause to the circuit court to determine the heirship among those who may be heirs of Myron DeGroff.

*Reversed and remanded with directions.*