Foster C. Hennion died on June 24th, 1940, intestate and unmarried, a resident of Hoboken, Hudson County, New Jersey. On August 1st, 1940, Walter H. Dilworth, of Landsdowne, Pennsylvania, applied to the surrogate of Hudson County for letters of administration on Foster's estate. The surrogate issued letters to him. In his application Dilworth represented that he was the sole issue of the marriage of Foster's sister, Ida J. Hennion, and Frank T. Dilworth, and the only heir and next of kin of the decedent.
Foster was the son of Abram and Mary Hennion, both deceased. Abram had four children: Foster C. Hennion, the decedent aforesaid, Gilford Hennion, deceased, George W. Hennion, deceased, and the said Ida J. Hennion, deceased.
On November 27th, 1940, Elwyn Smith Wintermute filed a petition with the Hudson County surrogate seeking to set aside the appointment of Dilworth (the respondent herein), and in part alleged: that he is a first cousin of the decedent; that Dilworth is not the sole heir-at-law and next of kin of the decedent; that he is not the son of the said Ida J. Hennion; and that his application for letters of administration *Page 294 
was false and untrue. The petitioner asked that letters of administration be granted to him.
Dilworth thereupon was ordered to show cause why the prayer of Wintermute's petition should not be granted. On December 23d 1940, after a hearing, it was denied.
On February 20th, 1941, Jesse Mulford also filed a petition with the Hudson County surrogate alleging: that he is a first cousin of the decedent; that Dilworth was not the sole heir-at-law and next of kin of the decedent; that he is not the son of Ida J. Hennion; that she had died in her youth unmarried; that thereafter a young girl was taken into the Hennion household of the approximate age of Ida and that she was the mother of Dilworth. It prayed for a revocation of Dilworth's letters. The surrogate issued an order directing Dilworth to show cause why the prayer of the petition should not be granted. The application was subsequently denied.
Wintermute and Mulford then appealed to this court from the surrogate's orders of dismissal. The proceedings below, with additional testimony taken at the hearing on the appeals, constitute the record herein. On appeal the burden of proof is on the appellants. In re Brugnoli, 97 N.J. Eq. 349;127 Atl. Rep. 165.
Mary Garretson, aged eighty-two years, a half-sister of Wintermute, and a cousin of the decedent, on behalf of the appellants, testified before a commission appointed herein, in Michigan City, Indiana. Her statements bear every indication of a failing and unreliable memory. Her testimony, for the most part, is peripatetic, disconnected, rambling and lacks co-ordination of ideas. It is not convincing.
The appellants also presented the testimony of Ora Peck, a cousin of Foster, which likewise is not convincing. Through these two witnesses, the appellants endeavored to show that Ida Hennion died in early childhood unmarried and leaving no issue. They claim an interest in Foster's estate as his next of kin.
The appellants offered a copy of a census report made many years ago when Ida Hennion was a school girl of the approximate age of fifteen years. It recites that she was the child of Abram and Mary Hennion. It does not support the story of Ora Peck whose evidence implies that at the time the *Page 295 
census was taken, Ida Hennion was not alive. I find that evidence is not persuasive; it lacks clarity, and does not indicate its source of information. Kiely v. MacMurray,5 N.J. Mis. R. 1091; 139 Atl. Rep. 343.
The contents of the book purporting to exhibit the Wintermute "family tree," received in evidence by consent of counsel, is not supported by any testimony whatever. It does not disprove the respondent's contention that he is the only child of Ida Hennion, the sister of the decedent, Foster C. Hennion.
The evidence offered on behalf of the respondent, in my opinion, clearly and satisfactorily establishes the fact that he is the only heir and next of kin of the decedent, Foster C. Hennion. The evidence that the decedent addressed and recognized him as his nephew is positive and most conclusive. The wills and the probate records of the decedent's parents, Abram and Mary Hennion, support that conclusion. Abram and Mary, in their testaments, name and acknowledge the respondent as their grandchild. In the probate proceedings of those wills before the Vice-Ordinary of the Prerogative Court in this state, the decedent, Foster, swore: that he was the brother of Ida Hennion; that she was the daughter of his father and mother; and that the respondent was her son.
Orvil Van Dyne, a blood cousin of Foster and an executor with him under the will of Abram Hennion, also swore in the probate proceedings of Abram's will, that the respondent was the son of Abram's daughter, Ida J. Hennion. Foster was older than his sister Ida. Abram bequeathed $10,000 to his grandson, the respondent, to be paid him on his twenty-first birthday. (Exhibits R-1, R-2, R-4 and R-5.)
The marriage of the respondent's father, Frank T. Dilworth, and his mother, Ida J. Hennion, was established by the church records. Ida's age at the time of her marriage was approximately twenty years. She died a year later, on November 30th, 1886.
The Hennion family Bible shows the births and deaths of the Hennion children aforesaid. It was properly authenticated. (Exhibit R-9.) Among other things, it shows that Ida was born on April 12th, 1865. The entries contained therein are presumed to be known and accepted by the members of the family as correct. See Prudential Insurance Company *Page 296 of America v. Pierce's Adm'x, 270 Ky. 216; 109 S.W. Rep.
2d 616.
It was said in In re Colbert's Estate, 51 Mont. 455;153 Pac. Rep. 1022:
"The admissibility of a family Bible containing a family tree or record does not depend upon authorship or authenticity of the entries; but upon the fact that it is the family Bible and record, recognized as such by those with whose genealogy or pedigree it is concerned * * *, and for the same reason neither chronological order nor superficial integrity can be a condition to its reception, whatever effect these circumstances may have upon its probative value. So, in view of the testimony of Mrs. Beedy that these entries were made by persons who are now dead and that the Bible and record have always been recognized in the family of Mrs. Clement as the family Bible and record, we think it was admissible * * *."
In the case of Fulkerson v. Holmes, 117 U.S. 389;6 Sup. Ct. 780, the court said:
"But it is evident that but slight proof of the relationship will be required, since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy."
A deceased person's declarations concerning pedigree, or the relationships in his own family, or about his heirs, to a third person witness is competent evidence. It is, of course, an exception to the hearsay rule. Its competency is recognized in this state as well as in many other states of the nation as the following citations show: Jarchow v. Grosse, 257 Ill. 36;100 N.E. Rep. 290; Nolan v. Barnes, 294 Ill. 25; 128 N.E. Rep. 293;Moffit v. Witherspoon, 32 N.C. 185; Malone v. Adams,113 Ga. 791; 39 S.E. Rep. 507; Wise v. Wynn, 59 Miss. 588; Cuddy v.Brown, 78 Ill. 415; Harvick v. Modern Woodmen of America,158 Ill. App.? 570; Young v. State, 36 Or. 417; 59 Pac. Rep. 812;60 Pac. Rep. 711; 47 L.R.A. 548.
In Jarchow v. Grosse, supra, the court said:
"Where, however, it is sought to reach the estate of the declarant himself, and not to establish a right, through him, to the property of others, his declarations with reference to *Page 297 
his family and kindred have been held admissible, though the relationship is not shown by other testimony. In Cuddy v.Brown, 78 Ill. 415, testimony of this character was admitted without objection and the holding in that respect has never been overruled or questioned. In Wise v. Wynn, 59 Miss. 588;42 Am.Rep. 381, the authorities on this question were reviewed and distinguished, and it was held that such evidence should always be received; that such declarations to some extent stand upon the same footing as declarations against interest or self-serving declarations; that if not admitted, in many cases there would be a failure of justice. In reaching this conclusion in that case the court cited and relied on Cuddy v. Brown, supra. The doctrine in the Mississippi case was followed in Malone v.Adams, 113 Ga. 791; 39 S.E. Rep. 507; 84 Am. St. Rep. 259, andYoung v. State, 36 Or. 417; 59 Pac. Rep. 812;60 Pac. Rep. 711; 47 L.R.A. 548. That doctrine has also been sanctioned in 1Elliott on Evidence § 381; 9 Ency. of Evidence 741, and 22 Am. Eng. Encycl. L. (2d ed.) 643. Where the claimant is seeking to reach the estate of the declarant himself, we think, on principle as well as authority, such declarations, from the very necessity of the case, are admissible without extrinsic proof of the relationship thus declared."
Rogers v. DeBardeleben Coal and Iron Co., 97 Ala. 154;12 So. Rep. 81.
As to the quality of pedigree testimony, 23 Corp. Jur. 58, says:
"In pedigree cases general reputation as to marriages, births, and deaths is highly satisfactory evidence. The official register of births and baptisms is usually strong evidence of the facts stated therein and better than testimony to oral declarations and admissions of strangers to the record * * *. Testimony of interested parties to oral declarations of persons long since dead is regarded with suspicion. It can hardly overcome opposing inferences derived from official entries, and is inferior in weight to testimony of witnesses who speak from personal knowledge."
Henrietta Haddenhorst, Elvina Haddenhorst and a Mrs. Schutts, testified to the prevailing relationship and the existing family history of Foster, the decedent, his sister Ida, her husband, and the respondent Walter from facts within their *Page 298 
own observation and knowledge. They are not related to any of the Hennion family. Mary Taggart also testified to declarations of Foster about the relationship between him and Walter, the respondent. Their testimony supports the respondent's claim.
The respondent offered in evidence checks which he received in payment of legacies bequeathed him by his grandparents, Abram and Mary Hennion, and releases which he gave as an acknowledgment of their receipt. (Exhibits R-10 to R-13, inclusive.) Those checks and releases were discovered in the decedent's files. They are not self-serving as the appellants contend. They are strong and, in most cases, convincing testimony. They corroborate the respondent's claim that he is the nearest of kin to the decedent Foster. In 22 Corp. Jur. 227, appears:
"The rule has been held not applicable in a great number of cases in which it has been invoked, being like the hearsay rule, frequently made the basis of an objection to evidence which by no means falls within its scope. Without attempting to exhaust all cases of this character, but as illustrative of the judicial attitude, numerous instances are set out * * * where various courts have refused to exclude particular statements as self-serving declarations."
The respondent Dilworth testified to the circumstances under which the checks and releases were executed and exchanged over twenty-five years ago.
Mary Hennion in her will gave her grandson, the respondent, $1,000, payable to him on his twenty-fifth birthday. Foster on several occasions gave the respondent large sums of money (seeExhibit R-14); viz., $40,000 on March 31st, 1930, on his marriage, $2,500 on January 2d 1932, $1,200 on December 25th, 1933, and $2,500 on December 23d 1934. All of these donative evidences tell their own unassailed story and likewise confirm the respondent's.
I am convinced that the orders of the surrogate of Hudson County in appointing the respondent, Walter H. Dilworth, administrator of the estate of Foster C. Hennion, should be affirmed; and that the appeals taken from his orders should be dismissed. I so direct. I believe that the respondent is the only heir and next of kin of the decedent, Foster C. Hennion. He is entitled to administer the estate. *Page 299