# WELCH *v.* LYNCH.*

TRIAL; STET CALENDAR; DISMISSAL; ABATEMENT; HUSBAND AND WIFE; APPEALS; OBJECTIONS; CONSOLIDATION OF CAUSES; DEPOSITIONS, OBJECTION TO; EJECTMENT; EVIDENCE; DECLARATIONS; PEDIGREE, PROOF OF.

1. Where cases at law, after having been placed on the stet calendar under rule 39 of the lower court, were, on notice of plaintiff's attorney, set for trial, and stood over from term to term under orders of the court fixing successive dates for trial, and finally tried after the court had vacated an order of the clerk entering one of them dismissed, and overruled motions by the defendants to dismiss, it was *held*, that although a general rule of court is binding on the court making it, this court would not reverse the rulings of the lower court vacating the entry of dismissal by the clerk and overruling defendants' motion to dismiss, in view of the familiarity of the lower court with the ordinary interpretation and application of its own rules. (Distinguishing *Karrick* v. *Wetmore*, 25 App. D. C. 415; 205 U. S. 141, 51 L. ed. 745, 27 Sup. Ct. Rep. 434.)

2. While on the death of a married woman, leaving children, her husband, as tenant by the curtesy consummate of her real estate, becomes entitled to the possession thereof (following *Frey* v. *Allen*, 9 App. D. C. 400), he cannot properly be substituted, by amendment, on her death, as sole plaintiff in a pending action of ejectment commenced by her, as his right to the possession does not devolve upon him by the death of the wife, but becomes consummate thereby, and is created by operation of law. (Construing secs. 236 and 237, D. C. Code, 31 Stat. at L. 1227, 1228, chap. 854.)

3. Error apparent on the face of the record, and of a nature to compel notice, may be taken cognizance of by the appellate court, although the objection thereto by the appellant is not sufficiently specific.

*Evidence.*—Entries in family Bible or other religious book as evidence of pedigree, see note to *Supreme Council, G. S. F.* v. *Conklin*, 41 L.R.A. 449.

4. It is within the discretionary power of the trial court to consolidate causes for trial, when they are of like nature, involving the same property and the same substantial questions of law and fact, and the defendants are the same.

5. Objections to depositions as a whole, on the ground of want of proper notice and other irregularities, made when they are offered in evidence, come too late,—especially when it appears that the objecting party appeared by counsel when the depositions were taken, and cross-examined the witnesses. (Construing sec. 1058, D. C. Code, 31 Stat. at L. 1354, chap. 854.)

6. Where, in an effort to trace descent, it is sought to be shown that two men were brothers, declarations by the deceased children of one of them that the two were stone masons and partners, that one did the clerical work for the other, who could neither read nor write, and defrauded him, and that the children of the latter expected to come into their property again by inheritance from the only surviving child of the former, are inadmissible, having no relevancy or relation to the question of the pedigree of the two persons, and being neither necessary nor important to their identification.

7. To make declarations admissible as evidence of the pedigree of an alleged collateral relation, in order to establish a claim to his estate by descent, there must first be offered some competent evidence, *aliunde*, of relationship between him and the declarants. (Following *Jennings* v. *Webb*, 8 App. D. C. 43.)

8. *Quære*, whether the general rule that objections for incompetency or irrelevancy, not noted at the time of the taking of depositions *de bene esse*, may be made at the trial, has been changed by the provisions of sec. 1058, D. C. Code, providing that such depositions shall be admissible in evidence, "subject to such objections to the questions and answers as were noted at the time of taking the depositions, or within ten days after the return thereof, and would be valid were the witness personally present in court;" and *quære*, also, whether such depositions, taken before the Code went into effect, would be governed by such provision.

9. Records of judicial proceedings, offered in evidence by the defendants in an action of ejectment, showing that the plaintiffs failed to appear therein as heirs at law or next of kin of the parties whose estates were administered therein, are inadmissible as negativing the claim that the plaintiffs were related to such parties and so entitled to recover in the action of ejectment, where it does not appear that the plaintiffs had any substantial interest which called upon them to appear in such proceedings.

10. An unsigned paper in the handwriting of the attorney of a deceased person, found among the papers of the attorney after his death, and purporting to be his memoranda of the statement of his client relating to the pedigree of the latter's father, is inadmissible to show such pedigree, where there is nothing to show that the client ever saw or approved of the paper.

11. Where a judgment for the plaintiffs in an action of ejectment was reversed on other grounds, errors assigned by the defendants relating to the failure of the trial court to direct a verdict for them; to the return and amendment of the verdict; to the entry of a single judgment in two consolidated cases, and to the form of the judgment,—were not considered by this court.

No. 1745. Submitted April 4, 1907. Decided June 4, 1907. Motion for Rehearing, June 18, 1907. Rehearing denied November 1, 1907.

HEARING on an appeal by the defendants from a judgment on verdict of the Supreme Court of the District of Columbia in two actions of ejectment consolidated for trial.    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment rendered in two actions of ejectment that were consolidated for trial in the supreme court of the District of Columbia.

The first action was begun on June 22, 1899, by Mary Ann McGee and a number of others against William M. Cherry and Pliny T. Moran, partners under the name and style of Cherry & Moran Company, to recover possession of an undivided two-thirds interest in the west half of lot No. 2 in square 408 in the city of Washington, together with the sum of $25,000 mesne profits, on account of use and occupation of the said premises. Mary J. Welch and others, claiming to be the real owners of the premises as lessors of Cherry & Moran Company, were admitted as defendants on their motion June 25, 1900.

The second action was begun by Mary A. Lynch, sole plaintiff, on December 16, 1899, to recover of the said Cherry & Moran Company an undivided one-third interest in the same premises, together with mesne profits in the sum of $25,000.

Mary J. Welch and others appeared and were admitted as defendants for the same reasons as in the first action.

On April 25, 1901, an order was entered in each cause placing it upon the stet calendar, on the ground stated that it had been upon the trial calendar for three terms, and was not ready for trial when reached on the call of the calender on that day. See C. L. Rule 39, Sup. Ct. D. C. On March 8, 1902, plaintiffs in each case (represented by the same counsel) gave notice of intention to press for trial during the succeeding term (April) and to apply to the court to designate the time for trial. On April 1, 1902, the court ordered the cases set for trial at that term, to follow cause No. 318 on the trial calendar. On October 10, 1902, the following order was entered by the clerk in each: "This cause having remained upon the stet calendar for more than three terms, pursuant to rule of court, said suit is hereby dismissed at the costs of the plaintiffs." This order was vacated by the court on October 20, 1902, on the ground that it had been inadvertently entered. On January 12, 1904, defendants moved the court to dismiss the cases for failure to prosecute the same under the provisions of rule 39. This motion was overruled March 25, 1904, and the cases ordered to the foot of the trial calendar for trial at the same term. On November 18, 1904, the cases were set for trial on December 12, 1904. The next action taken was on August 15, 1905, when defendants again moved to dismiss under rule 39. On same day plaintiffs gave notice of intention to press for trial at the next term. January 26, 1906, the court denied the motion to dismiss, and ordered the cases to the foot of the calendar for trial at that term. April 26, 1906, plaintiffs in the first case suggested the death of certain plaintiffs, testate and intestate, and the marriage of others, asking for the substitution of heirs at law, devisees, etc., as parties. On the same day the death of Mary A. Lynch, sole plaintiff in the second case, was suggested; and it was alleged that she died intestate, leaving a surviving husband, William T. Lynch, and eight children, who were named; but the request was to admit only the husband as plaintiff, instead of his deceased wife; and this was granted.

Defendants moved to continue on account of these suggestions of death and so forth, but were overruled. The court then ordered the cases consolidated, and the long postponed trial was begun, after another motion by defendants to dismiss had been overruled, with leave to the substituted plaintiff in the second case to file an amended declaration. This amended declaration was by William T. Lynch, as sole plaintiff. He alleged the necessary facts tending to show that upon the death of his wife, Mary A. Lynch, he became seized and possessed of the premises as tenant by the curtesy. He claimed thereby to recover possession and mesne profits in the sum of $45,000, for use and occupation since May 23, 1891. Defendants objected to this amended declaration being filed, because no heir, devisee, or personal representative of the said Mary A. Lynch was made a party plaintiff. On the same day the defendants also moved the court for a postponement, or continuance, and to dissolve the consolidation of the causes. All objections and the motion were overruled. Defendants then demurred to the amended declaration of William T. Lynch, substituted plaintiff, on the ground that he had no right to be substituted for, or to continue the action begun by, Mary A. Lynch. This demurrer was overruled.

On May 4, 1906, the jury returned a verdict for all of the plaintiffs, and awarding damages for use and occupation. The finding in favor of William T. Lynch was an estate for life in the one-third interest sued for, and $3,600 damages. The interests recovered by the plaintiffs in the first case (amounting in the aggregate to two thirds) were designated, and the damages apportioned among them amounted to $21,100. Motions for new trial and in arrest of judgment having been overruled, a general judgment was entered in accordance with the findings of the jury.

The evidence showed that the title to the land in controversy was in one Nicholas Whelan on August 25, 1810. Nicholas Whelan had one child, Catherine Ann, who was born in 1812. He died intestate in 1815, on a farm near Colesville, in Montgomery county, Maryland. Catherine Ann Whelan lived with

her mother on the said farm, the latter dying in 1836, and her mother's brother was her guardian. She never married, and in 1867 was declared insane and a committee appointed of her person and estate. She died in 1891. The defendants, as heirs of the mother of Catherine Ann, entered into possession of the premises in controversy, and remained in undisputed possession until the commencement of this litigation, in 1899. The plaintiffs are the heirs at law of one John Patrick Whelan, who, they attempted to show, was the brother of the said Nicholas Whelan. Catherine Ann Whelan having died intestate, without having a brother or sister or descendants of a brother or sister, or a grandfather on the father's part, the title to the land in controversy, if cast by descent, passed, by the terms of the statute, to the descendants of the grandfather on the father's part, in equal degree equally.

Plaintiffs introduced evidence tending to show that the plaintiffs in the first suit were all descendants of John Patrick Whelan, and that Mary A. Lynch, original plaintiff in the second suit, was a granddaughter of said John Patrick Whelan; that she died leaving eight children, and a husband, William T. Lynch, in whose name alone, as tenant by the curtesy, said second suit is now maintained.

To prove the kinship of John Patrick Whelan, and Nicholas Whelan, the father of Catherine Ann, they relied chiefly on the depositions of three witnesses, taken *de bene esse.* These were Mary A. McGee, Mary A. Lynch, and Airy Ann Dover.

Such of this evidence as tended to show who were the descendants of John Patrick Whelan is omitted as unnecessary. Mary Ann McGee testified that she was a granddaughter of John Patrick Whelan, and was born in Rockville, Maryland, December 12, 1823. She knew John Patrick Whelan, who died in 1830. He had a brother, Nicholas Whelan, and a sister, Sarah Sweeny, who lived with John Patrick and died in 1828, leaving no descendants. Nicholas died in 1815. She never heard her grandfather say that Nicholas was his brother, but had heard her grandmother and Sarah Sweeny say that they were. She derived her knowledge that they were brothers from

the statements of them and her uncles and aunts. That witness was about twelve years old when she last saw Catherine Ann Whelan, who was eight or nine years older. That witness's Uncle Tom wanted to marry Catherine Ann, and there was a meeting at witness's father's house. They wanted to marry, but the priest would not marry them because they were first cousins. All parties were Catholics. Upon cross-examination she was unable to describe Catherine Ann. She did not know the name of John Patrick Whelan's father; had never heard any of the family speak of it. She was nearly five years old when her grandmother and grandaunt Sarah Sweeny died, and remembered hearing them say that John Patrick and Nicholas were brothers. She further testified that Mrs. Welch, one of the defendants, came to see her in 1891, and inquired how near she was related to Catherine Ann. She told her that she was her second counsin, as their grandfathers were brothers. That Mrs. Welch said she knew they were kin, but did not know it was so near; and said, further, that she was not fighting for the city property because she knew that belonged to the Whelans, but that she was after the farm in Maryland. Several others of the plaintiffs testified to this interview and the statements attributed to Mrs. Welch. Witness further testified that she had heard from her family that John Patrick and Nicholas were stone masons, and had worked together in the capitol and Tiber creek work. That Nicholas clerked for John Patrick; he could read and write, but John Patrick could not, though he was a contractor. That there was some disagreement between John Patrick and Nicholas, in business, about some papers. She did not know if Nicholas owed him any money, but that he took all of his papers. She had heard her Aunt Margaret speak of it. John Patrick left no estate.

Mary Ann Lynch testified that she was born March 22, 1841, in Montgomery county, Maryland, and was a granddaughter of John Patrick Whelan. She had heard her Aunt Margaret say that John Patrick and Nicholas were brothers, and that Catherine Ann's property would fall to them after her death. She also heard her mother and her uncle say that they were brothers.

She had heard them say that John Patrick was a stone mason and had been a contractor on the Tiber creek canal, and that Nicholas worked with him and kept the books. That Nicholas did not do right with the money, and that is why they expected it back at Catherine Ann's death. Witness never saw Catherine Ann, and had no relations with her family.

Defendants objected specially to the hearsay evidence as to the occupation of Nicholas Whalen and of his working with John Patrick, and the statements that he had gotten his money and papers.

Airy Ann Dover, testifying by deposition in May, 1903, said she was then eighty-eight years old. She was born a slave. Her father was Bill Scotland, a slave of John Patrick Whelan. She was sold, when between nine and ten years of age, to Kengla. That she stopped at John Patrick Whelan's on her way to Kengla's, and was there three times afterwards. She remembered him and his children, as she had been there often before her sale. She did not know Nicholas Whelan. She remembered seeing Catherine Ann Whelan at John Patrick's house, and had played with her a whole day. She thought she was one of the family until she heard her say "Cousin Peggy" and "Cousin Tom." Heard the children call each other cousin. Never heard John Patrick say anything about being related. He spoke Irish only. Catherine Ann was then about twelve or thirteen years old. She said that her father told her that "Massa Nick and Ol' Massa" stuck the first pick in the canal to get out stone for building the pillars of the capitol. The court overruled objections to this last statement, on the ground that the objection was not noted in the deposition, and should have been made within ten days after the same was filed.

Martha Whelan testified that she was fifty-nine years of age, and had heard her Aunt Peggy say that Nicholas and John Patrick had had business difficulties and became estranged, and that Nicholas and his wife were estranged for years. Objections to this were made and overruled.

Upon the conclusion of the plaintiff's evidence, defendants moved the court to direct a verdict on the ground that no suffi-

cient testimony had been introduced upon which a verdict for plaintiffs could be founded, and because plaintiffs had failed to prove that Nicholas Whelan was the brother of John Patrick. This was overruled.

Defendants offered in evidence a certified copy of a deed executed March 2, 1814, by Nicholas Whelan, conveying the premises and certain personal property to William Brent and John Davidson, reciting his desire to make over all of said property and convey and confirm the same to his "daughter Kitty Ann Whelan and the heirs of her body lawfully begotten forever, subject to the following stipulations and proviso, that is to say, that if and in case the said Nicholas Whelan shall at any future time or times hereafter wish and desire to sell, dispose of, or convey and confirm in fee simple and absolutely or otherwise the aforesaid property or any part or parcel thereof that then in such event it shall be lawful and he the said Nicholas Whelan shall—full power and absolute authority so to do and act and the said property or any part or parcel thereof to sell and convey and assure by deed or deeds of bargain and sale or otherwise as fully and effectually to all intents and purposes as if this present instrument of writing had never been made and executed, anything herein contained to the contrary notwithstanding." The grant was then in trust for the sole interest and so forth of said Kitty Ann Whelan, to her use, benefit, etc., and the heirs of her body lawfully begotten forever, subject to the conditions and proviso before recited. There were no attesting witnesses, but the instrument was acknowledged before one of the judges of the circuit court of the District of Columbia and duly recorded. This was objected to as irrelevant and immaterial, and was excluded, with exception reserved.

Defendants next offered to show by Mary J. Welch the pedigree of Catherine Ann Whelan on the maternal side, and stated that it was intended to show by further testimony that Catherine Ann never had any relatives by the name of Whelan, and, further, that Nicholas Whelan was a nephew of John Patrick Whelan, and that Catherine Ann acquired the property by pur-

chase, and not by descent.    The court sustained the plaintiffs' objections to this evidence.    This witness also denied the statements made by plaintiffs' witnesses as to her declarations to Mrs. Welch, one of the plaintiffs.

Defendants next offered in evidence a certified copy of the will, and probate thereof in Maryland, of Catherine Ann Whelan, purporting to have been made September 28, 1844, devising and bequeathing her entire estate to Thomas Connolly, who died before the testator.    Plaintiffs objected, and defendants stated the purpose was to show by subsequent testimony that a caveat was filed to the probate of said will in Maryland, that there was long litigation, and that none of the plaintiffs or their ancestors came forward to assert their rights.    The court sustained the objection on the ground that neither plaintiffs nor their ancestors were made parties to said litigation, [nor did it appear] that they knew of the same.

Defendants then offered the proceedings in Maryland declaring Catherine Ann a lunatic and appointing a committee of her person and estate, in 1868; and proposed to show that none of the plaintiffs or their ancestors ever came forward to assert their rights therein; and also that witness never heard of any claim by the Whelans of relationship to said Catherine Ann. This was all excluded upon objection of plaintiffs to it as immaterial and irrelevant.    Witness was also asked when she first heard of claims by the Whelans to any interest in the premises, but this was excluded on the same grounds.    Defendants then offered copies of the proceedings of the probate court of Maryland relative to the administration of the estate of Nicholas Whelan, showing renunciation of the right to administer by his widow, and the appointment of Michael Connolly as administrator in her stead; the ground of relevancy being stated that the Whelans, if next of kin, would have the right to claim the appointment, and that they made no such claim. The court excluded this also as irrelevant.

Edward P. Welch, husband of one of the defendants, was then introduced, and testified that Major England, a lawyer formerly living in Maryland, had been their counsel in a case in 1867.

He produced the following paper which he testified was in the handwriting of said England:

## Margaret Whelan's Statement.

Mary A. McGee wife of Bernard McGee & John Whelan children of my brother Patrick deceased. (Washington)

Nicholas & William Whelan & Sarah Holley wife of Wm. Holley (Poolesville) & (Dufief's Mill Montgomery County) children of my brother Nicholas dec'd and John his son dec'd left children Mary, John & Martha, Francis and Charles and Sarah Polson (Tennessee).

My father John P. Whelan was brother to Kitty A. Whalen grandfather Patrick W. Her father was Nicholas W.

My sister Mary Whelan deceased married John Tarman—she left children, Mary Lynch wife of Wm. S. Lynch—Joseph Tarman (who lives with a man by name of Douglass in D. C.)

I have no brother or sister living.

Plaintiffs objected to the memorandum as hearsay, and it was excluded.

Certain parts of the charge to the jury were excepted to, but it is unnecessary to state them. Among other directions the jury were charged, in case they should find for the plaintiffs in respect of the title, to divide the damages among them in their proper proportion, and in so doing to limit the claim of William T. Lynch to the rental value of the premises from and after May 9, 1903, the date of the death of his wife, Mary A.

The jury reported a general verdict for the plaintiffs without apportionment; whereupon the court, agreeing with a division, as calculated by the plaintiffs, directed the verdict to be amended and returned in accordance therewith. It is claimed that the verdict and judgment omitted from their recitals the names of several persons shown by the evidence to be heirs at law of certain deceased plaintiffs; and that, in consequence, recovery to which they were entitled accrued to the benefit of the other plaintiffs.

Defendants excepted to these several proceedings, and moved to arrest the judgment on several grounds, as follows: That William T. Lynch was not a proper party to be substituted for the plaintiff Mary A. Lynch; that the verdict was rendered in one cause only, instead of separately in both; that the said causes had been improperly consolidated. The motion was over-ruled.

*Mr. Nathaniel Wilson, Mr. Edward C. Peter, Mr. Walter D. Davidge* and *Mr. Clarence R. Wilson* for appellants.

*Mr. Henry E. Davis* and *Mr. Charles A. Keigwin,* for the appellees:

The Lynch Case went to trial upon the amended declaration of the substituted plaintiff, over the objection only that that declaration should not have been received because of the non-joinder or nonappearance of an heir, etc., of the deceased original plaintiff. There was no suggestion that the original action should be abated; and the motion made *ore tenus* after the trial had been entered upon, that the case be dismissed and the plaintiff nonsuited, was both meaningless and too late, seeing that the order of substitution had already been made without objection, and the substituted plaintiff given leave to file his amended declaration. · And, after the filing of the amended declaration the appellants first demurred and afterwards pleaded thereto, and went to trial thereon.

The situation then presents in this connection, as the only question for consideration, not whether the original action should have abated and the surviving husband driven to his action *de novo,* but whether the surviving husband had the right to maintain an action in his own right as tenant by the curtesy; and that he had is beyond all doubt, as also is beyond all doubt the utter inability of the heirs at law of the original plaintiff to maintain any action during the lifetime of the surviving husband.

The action of ejectment is a possessory action, and the plaintiff, to entitle himself to recover, must have the present right of possession; and whatever takes away this right of possession will deprive him of the remedy by ejectment. *Cincinnati* v. *White,* 6 Pet. 431, 441; *Lansburgh* v. *D. C.* 8 App. D. C. 10. The holder of an estate by the curtesy initiate has the right of possession during his life, and he may commence suit and recover possession in the same manner that other tenants for life recover possession of their estates. *Jacobs* v. *Rice,* 33 Ill. 370; *Wilson* v. *Arentz,* 70 N. C. 670. A husband having an estate by the curtesy, the wife's grantee of her remainder cannot maintain ejectment during the lifetime of the husband, but after his death may. *Shortall* v. *Hinckley,* 31 Ill. 219. When one holds land as tenant by the curtesy, those deriving title from his deceased wife cannot sue during his life. *Reaume* v. *Chambers,* 22 Mo. 36, 52; *Miller* v. *Bledsoe,* 51 Mo. 96; *Rathbone* v. *Hamilton,* 4 App. D. C. 475; *Frey* v. *Allen,* 9 App. D. C. 400. A tenant by the curtesy of an undivided half interest in land is a proper party plaintiff in an action of ejectment to recover possession thereof. *Moore* v. *Ivers,* 83 Mo. 29. In all cases of substitution, the question is whether the party substituted is the one who has succeeded to the right of the original plaintiff which was the object of the suit,—in this case, possession. *Shoemaker* v. *Huffnagle,* 4 Watts & S. 436, 444. And even where a substitution has been erroneously made, it will not be ground for reversal if not prejudicial. Thus, if the personal representatives of a plaintiff in ejectment, who dies pending the suit, and not his heirs, are the proper persons to succeed him in that suit, yet, after the heirs have been made parties by order of the court, so long as this order is not reversed or vacated, the heirs may recover if the personal representatives could, had they been made parties. *Williams* v. *Savannah, etc., R. Co.,* 94 Ga. 540. And a verdict and judgment in an ejectment suit in favor of the plaintiff's administrator, who was admitted to prosecute the case, will be amended on the appeal, the defendant not being prejudiced. *Cook* v. *Bertram,* 86 Mich. 356.

Mr. Chief Justice Shepard delivered the opinion of the Court:

1. The first error that has been assigned relates to the proceedings in the cases under rule 39 of the trial court, commonly called the stet rule. The contention is that, by the operation of that rule, the court lost jurisdiction to try the cases. The rule was devised to facilitate trials by relieving the calendar of cases the prosecution of which was not being pressed for any reason. The rule provides that in all cases on the trial calendar not otherwise disposed of by the end of the third term after issue joined (unless under special circumstances not occurring here) there shall be entered a stet, and they shall not be brought forward to succeeding terms except as hereafter directed. Section 2 provides that, if either party shall desire to try a case in which a stet has been entered, it shall be his duty to give fifteen days' notice, before the commencement of another term, of his intention to press for trial, etc., and he shall have the right to insist upon trial as if the case were regularly on the calendar for that term; the court having the right to designate the order and time of calling the case, having reference to the other business of the term. Section 3 provides that stet cases shall be entered upon a stet calendar, and after the expiration of the third term after stet entered it shall be the duty of the clerk, without direction from the court, to make an entry dismissing the cause at plaintiff's cost. Rule 39 was amended October 31, 1904, by providing that a case upon the trial calendar, regularly called at three terms, and not tried, shall be stricken therefrom; and a case so stricken therefrom shall not be restored except by leave of court upon motion in writing filed within one year; and if no such motion the cause shall at the end of the year be entered by the clerk as dismissed for want of prosecution. A case so restored, if not tried when called, shall be dismissed, unless otherwise ordered by the court. But one of the cases, as is shown in the preliminary statement, was entered as dismissed by the clerk under the rule; and this entry was promptly vacated as improperly entered. A general rule of court is, of course,

binding upon it. The trial court having promulgated rule 39, and being familiar with its ordinary interpretation and application, we are not prepared to say that, from the recitals of the record, it erred in restoring the dismissed case to the calendar, and ordering its trial. Nor was the order of the court vacating the order of dismissal entered by the clerk, in supposed compliance with rule 39, within the rule enounced in *Karrick* v. *Wetmore,* 25 App. D. C. 415, 205 U. S. 141, 51 L. ed. 745, 27 Sup. Ct. Rep. 434.

2. The next assignment of error in order is founded on the action of the court in permitting the revival of the second action, that had been brought by Mary A. Lynch, in the name of her husband, William T. Lynch, as sole plaintiff. Assuming that the heirs of John Patrick Whelan became vested with the title of the whole of the premises on the death of Catherine Whelan, Mary A. Lynch became entitled to the undivided one-third thereof, for the recovery of which she brought said action. As we have seen, she left eight children, to whom her estate descended, as she died intestate. It is contended by the appellee William T. Lynch, and not denied by the appellants, that, upon the death of Mary A. intestate, his initiate estate as tenant by the curtesy became consummate, which entitled him to claim the possession at her death, and to maintain an action therefor, to the exclusion of her heirs at law during his life. *Frey* v. *Allen,* 9 App. D. C. 400. By rule of the common law, all pending actions abate upon the death of the plaintiff, and the right to revive and continue the same is a statutory creation. In our Code, by adaptation of the Maryland act of 1785, chap. 80, sec. 1, it is provided that no action shall abate by the death of a party (where it is one that can survive); and where the plaintiff dies "before judgment is given, the heir, devisee, executor, administrator, or other proper person to prosecute such action may appear and prosecute the same" etc. If the new plaintiff voluntarily appear, or be summoned before the suit shall abate, "all proceedings in the action had before the death of the plaintiff shall be considered as proceedings in the cause, and such other proceedings shall be had to bring the cause fairly to trial

as the court may deem proper." Secs. 236, 237 [31 Stat. at
L. 1227, 1228, chap. 854]. The surviving husband is not in-
cluded in those authorized to revive and continue the action, who
are those only upon whom the estate of the plaintiff devolves
at death. The right of the surviving husband to the possession
of the premises, as tenant by the curtesy, was created by opera-
tion of law. It did not devolve upon him by the death of his
wife, but was consummated thereby. He did not succeed to
her right of possession, but, in consequence of her death intes-
tate, he became entitled to a new and independent possession of
his own. Whether the personal representatives or next of kin of
Mary A. Lynch might have revived the action, in so far as it
involved the recovery of the mesne profits to which she was en-
titled to the time of her death, is a question we are not called
upon to consider, as no attempt was made to do so. We think
it was error to permit the revival by the surviving husband, and
its continuance on his own behalf. The suit of Mary A. Lynch
abated, and was out of court; and a new action and summons
on the part of the new plaintiff was essential. *Wilson* v. *Gar-
aghty,* 70 Mo. 517, 519; *Buck* v. *Goodrich,* 33 Conn. 37, 41;
*Ryder* v. *Robinson,* 2 Me. 127; *St. John* v. *Croel,* 10 How. Pr.
253; *Barrett* v. *Birge,* 50 Cal. 655; *Barribeau* v. *Brant,* 17
How. 43, 15 L. ed. 34; *Green* v. *Watkins,* 6 Wheat. 260, 262,
5 L. ed. 256, 257. The objection by the defendants to this
substitution of plaintiffs was specific enough, we think; but it
is unnecessary to discuss the point, as the error is apparent on
the face of the record, and of a nature to compel notice. *Mack-
er* v. *Thomas,* 7 Wheat. 530, 532, 5 L. ed. 515, 516.

3. Had the action brought by Mary A. Lynch been capable
of revival by her husband, there would have been no error in
the order consolidating the two cases for trial. They were of
like nature, involving the same property and the same sub-
stantial questions of law and fact, and the defendants in each
were the same. Under such conditions it is within the dis-
cretionary power of the trial court to consolidate cases for trial
in order to avoid unnecessary expense and consumption of time.
Rev. Stat. sec. 921, U. S. Comp. Stat. 1901, p. 685; *Mutual*

*L. Ins. Co.* v. *Hillmon,* 145 U. S. 285, 293, 36 L. ed. 706, 709, 12 Sup. Ct. Rep. 909. But as the action of Mary A. Lynch abated at her death, and could not be revived and continued in the name of her surviving husband, as has been held, there was no foundation for the order of consolidation. There remained but one action that could be tried.

4. Several specifications of error relating to the entire deposition of Airy Ann Dover, and to specific parts of her depositions, as well as those of Mary Ann McGee and Mary Ann Lynch, will be considered under one head. These depositions were taken *de bene esse.* Two of the deponents died before trial, and Airy Ann Dover was too feeble to be produced at the trial. (1) The depositions of Airy Ann Dover were taken to be used in the two pending cases, and in an equity suit relating to the property, the nature of which does not appear. The objection was to the want of proper notice. The objection was not made on this ground until the depositions were offered in evidence. It appears also that defendants were represented by counsel when all of the depositions were taken, who cross-examined the witnesses at length. The objection to the depositions, as a whole, on this ground of want of proper notice, and for other informalities, came too late. Code, sec. 1058 [31 Stat. at L. 1354, chap. 854]. To this extent the Code but declares the ordinary rule of law in such cases. *Howard* v. *Stillwell & B. Mfg. Co.* 139 U. S. 199, 205, 35 L. ed. 147, 149, 11 Sup. Ct. Rep. 500.

(2) Certain answers of two, at least, of these witnesses tended to show declarations of certain deceased children of John Patrick Whelan to the effect that both John Patrick and Nicholas had been stone masons, and worked in partnership on the Tiber creek canal and the foundations of the capitol; that John Patrick could neither read nor write, but Nicholas could; that Nicholas did the clerical work for John Patrick, who was a contractor, and took his papers and otherwise defrauded him; and that the heirs of John Patrick expected to come into their property again through inheritance from Catherine Ann Whelan, the only surviving child of Nicholas. The questions elicit-

ing these answers, and the answers themselves, were objected to as hearsay when the depositions were taken, and noted therein. They were renewed specially when the depositions were offered in evidence. We find no warrant for the introduction of the evidence of these declarations in any of the established exceptions to the general rule excluding hearsay testimony. They had no relevancy or relation to the question of the pedigree of either of the persons named, and were neither necessary nor important to their identification. *Queen* v. *Hepburn,* 7 Cranch, 290, 295, 3 L. ed. 348, 349; *Ellicott* v. *Pearl,* 10 Pet. 412, 437, 9 L. ed. 475, 485; *Sargent* v. *Lawrence,* 16 Tex. Civ. App. 540, 544, 40 S. W. 1075. (3) It appears from the printed copy of the entire depositions, which has by agreement been submitted to us to be taken as part of the record, that a motion was made by the defendants to suppress so much of the "deposition of Mary Ann McGee as relates to the relationship of herself or any plaintiffs to Kitty Ann Whelan as purports to be, or to be based upon, statements made to her or in her presence by persons other than the defendants, because there is no evidence in this case of any relationship of the witness to Kitty Ann Whelan, or her father, Nicholas Whelan, other than the statements of the witness based upon her own knowledge." This objection was evidently based upon the rule established in this jurisdiction, that the declarations of the members of the family of one ancestor alone are inadmissible to show that another person whose estate they claim by descent was the brother of that ancestor; or, in other words, to make declarations admissible as evidence of the pedigree of an alleged collateral relation, in order to establish a claim to his estate by descent, there must first be offered some competent evidence, *aliunde,* of relationship between him and the declarants. *Blackburn* v. *Crawford,* 3 Wall. 175, 187, 18 L. ed. 186, 191; *Fulkerson* v. *Holmes,* 117 U. S. 389, 397, 29 L. ed. 915, 918, 6 Sup. Ct. Rep. 780; *Jennings* v. *Webb,* 8 App. D. C. 43, 56; and see also *Wise* v. *Wynn,* 59 Miss. 588, 593, 42 Am. Rep. 381. It will be remembered that no declaration on this point emanated from either John Patrick or Nicholas Whelan. The difficulty

with the appellants on this point is, however, that the foregoing
motion, which applied also to but one of the depositions, seems
never to have been brought to the attention of the court at any
time, as far as the record discloses. Nor was any such special
objection noted in any of the depositions, or made at the trial.
Whether such objections on the ground of incompetency and
irrelevancy can be made on another trial, because not noted at
the time the depositions were taken or within ten days there-
after, is a question that may become of importance. Notwith-
standing, we do not feel called upon to determine it. In the
first place, the requisite evidence of the relationship of the de-
clarants to Nicholas Whelan may be produced upon another
trial. In the second place, it involves a point that has not been
argued on either side as to the application of sec. 1058 of the
Code. Apparently, the generally established rule is that, while
formal objections to such depositions must be made within a
reasonable time after their return, those for incompetency or
irrelevancy may be made at the trial, as in the case of the exam-
ination of ordinary witnesses. 13 Cyc. Law & Proc. pp. 1018,
1020; 6 Enc. Pl. & Pr. pp. 591, 596. It is argued that this
second rule has been changed by a provision of sec. 1058 of the
Code, which reads as follows: "But if the attendance of the
witness cannot be produced, then the said deposition shall be ad-
missible in evidence, subject to such objections to the questions
and answers as were noted at the time of taking the deposition,
or within ten days after the return thereof, and would be valid
were the witness personally present in court." Assuming, but
without expressly so deciding, that the argument is a sound one,
the question that has not been argued is this: As the deposi-
tions of the two important witnesses—Mary A. McGee and
Mary A. Lynch—appear to have been taken and returned not
later than July, 1900, are objections to any of their answers,
on the ground of incompetency and irrelevancy, governed by
the provision of the Code which did not take effect until Janu-
ary 1, 1902? See Code, sec. 1638 [31 Stat. at L. 1435, chap.
854].

＇5. There was no error in excluding the conveyance made by

Nicholas Whelan to trustees for the benefit of his daughter Catherine Ann, which was offered in evidence by the defendants to show that her title to the premises in controversy had been acquired by purchase, and not by descent. It is immaterial to consider the effect of the conveyance, for if Catherine Ann took by purchase, nevertheless, upon her death without issue or brothers or sisters or their descendants, her estate passed to the descendants of the grandfather on the father's side, which the plaintiffs claim to be, by another provision of the law of descents then in force. Md. act, chap. 45, sec. 2; D. C. Comp. Stat. p. 193. See Code. secs. 945, 950 [31 Stat. at L. 1342, 1343, chap. 854].

6. Other assignments of error founded on the exclusion, when offered in evidence by the defendants, of certain instruments and court proceedings, will be considered together. These are fully described in the preliminary statement, as: (1) The will of Catherine Ann Whelan made in 1844, and the probate thereof in Maryland in 1894; (2) the proceedings in the administration of the estate of Nicholas Whelan in the probate court of Maryland at some date, shortly after his death, that is not given in the record; (3) the record of the proceedings in equity in the circuit court of Montgomery county, Maryland, in 1867, or 1868, showing the adjudication of the lunacy of Catherine Ann Whelan and the appointment of a guardian of her person and estate. None of the heirs of John Patrick Whelan was a party to any of the proceedings, and it is conceded that the will had no operation upon the premises in controversy. The contention is that because the plaintiffs made no appearance in any of these proceedings, and asserted no right, these were relevant circumstances from which it might be inferred that, at the times mentioned, none of the descendants of John Patrick Whelan claimed any relationship with Nicholas or Catherine Ann Whelan, or any interest in their estates. As it appears that the plaintiffs, if related to Nicholas Whelan, had no interest in the Maryland property or in the distribution of his personal estate; that they had no substantial interest which called upon them to interfere in the proceedings relating to the lunacy of

Catherine Ann; and that the premises in controversy were not affected by her will,—we think that the court committed no error in excluding the evidence as irrelevant.

7. The paper in the handwriting of the Attorney England, found among his papers after his death and purporting to be his memorandum of a statement of Margaret Whelan, relating to the pedigree of her father, John Patrick Whelan, was properly excluded when offered in evidence by the defendants. The memorandum was not signed by Margaret Whelan; nor was there a particle of evidence tending to show that it had been seen, much less approved, by her.

8. Another group of errors that have been assigned relate: (1) To the refusal of the court to instruct the jury to return a verdict for the defendants; (2) to the proceedings relating to the return and amendment of the verdict; (3) to the entry of a single judgment in the two cases, and to errors in the form of that judgment. As the judgment will be reversed and a new trial ordered, we consider it unnecessary to pass upon the several questions arising hereunder. The evidence on another trial may be materially different, and if the plaintiffs, or any of them, should recover another judgment, the errors complained of, if such they were, in respect of the entry of the verdict and judgment, will, in all probability, not occur again.

For the errors that have been pointed out, the judgment will be reversed, with costs, and the cause remanded, with direction to set aside the verdict and grant a new trial. *Reversed.*

A motion by the appellees for a rehearing was denied November 1, 1907.