## Ellis et al. v. Dixon.

June 8, 1943.

H. L. Bryant for appellants.

H. C. Clay and D. M. Bingham for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Appellants here are seeking to establish their right to share in the estate of James Dixon, deceased husband of the appellee, Birdella Dixon, by reason of the claim that they are the surviving heirs of Dixon. The widow is contesting the claim and is asserting her right to the entire estate under the provisions of KRS 391.010 (5).

Appellants insist, and we think correctly so, that the trial court erred in sustaining exceptions to a part of their testimony which purports to connect directly the James Dixon of Pineville, Kentucky, with a James Dixon of the Kingdom of Great Britain and the ancestors of these appellants.

A well recognized exception to the hearsay rule relates to family history and pedigree. Declarations in regard to pedigree, although hearsay, are admitted on the grounds that they are the natural statements of persons who should know the truth and speak it at a time when there is no temptation to declare otherwise. However, the admissibility of such declarations is subject to these three conditions: (1) the declarant must be deceased; (2) the declarations must have been made at a time when there was no motive to distort the truth; and (3) the declarant must be related by blood or affinity to the family whose genealogy is under inquiry, and this relationship must be established by evidence other than proof of the statements of the declarant himself. Sub-

ject to these conditions, a witness otherwise competent can testify to statements of, or acts done by, a deceased person, provided they relate or pertain to the declarant's pedigree. New York Life Ins. Co. v. McQuie, 277 Ky. 268, 126 S. W. (2d) 458; Benham v. Kentucky Central Life Ins. Co., 240 Ky. 169, 38 S. W. (2d) 954; Aalholm v. People, 211 N. Y. 406, 105 N. E. 647, L. R. A. 1915C, 1039, L. R. A. 1915D, 215; United States v. Eng Suak Lun, 10 Cir., 67 F. (2d) 307. Therefore, we look to the record in its entirety to determine, from the evidence which is competent, the correctness or error of the trial court's adverse ruling to the claim of the appellants.

The evidence for the widow consists of her own and other depositions taken on direct and cross-examination and certain exhibits. She testified, in effect, that her deceased husband was born in Cumberland County, England, and immigrated to the United States when he was about 17 years old; she had known him for over 30 years; she married him in 1933; and had remained his wife until he died intestate in 1937. She further testified he frequently asserted he had no relatives in this country or in England, and that his father's name was Arthur Dixon and his mother's name was Jane Dixon. Other witnesses testified for her to the effect that they had known James Dixon for many years and that during these years of association he frequently mentioned the fact that he had no relatives in this country or in England. The appellee produced also a copy of James Dixon's application for citizenship, recorded in the Bell County Court, dated March 17, 1897, which shows: "That he came to the United States on the 21st day of May, 1890, from White Haven, Cumberland County, England * * *"; and his certificate of citizenship containing the same statement, recorded in the Certificate of Citizenship Book of Bell County. In addition there is an attested copy of the marriage license issued to James Dixon by the Clerk of the Bell County Court on April 9, 1933, which purports to show that his birthplace was Gosforth, Cumberland County, England; that his father's name was Arthur Dixon; and that his mother's name was Jane Dixon.

Against this evidence we have the interrogatories of one witness testifying for herself and the other appellants. The effect of her testimony is that she was born in Manchester, Lancaster County, England; has

resided in the United States since 1913; and is the daughter of Elizabeth Ann Dixon and Thomas Ellis, who were married in 1873. She also gives the names and addresses of all the appellants herein, both in the United States and England, and states that she obtained most of the information regarding the family history from her father and mother with whom she talked prior to their deaths about 35 years ago. She states further that she knew Jane Dixon personally; she died many years ago; was never married to her knowledge, but gave birth to a child named James at Salford, Manchester, England, about 1870; James was engaged in the mining business and came to the United States where, according to his letters, he continued in the same business; and she had heard of a James Dixon of Pineville, Bell County, Kentucky, and was his first cousin. In support of this testimony the witness introduced the birth certificate of a James Dixon, born July 22, 1870, the illegitimate son of one Jane Dixon, at Salford, Lancaster County, England; also the birth certificate of one Elizabeth Ann Dixon, daughter of James Dixon and Sarah Ann Parkinson Dixon; and the marriage certificate of one Elizabeth Ann D-i-c-k-s-o-n, daughter of James D-i-c-k-s-o-n, to Thomas Ellis. The witness states that the Elizabeth Ann Dickson who was born September 22, 1851, and the Elizabeth Ann D-i-c-k-s-o-n who married July 17, 1873, at the declared age of 20, is one and the same person, some of the members of the family having changed the spelling of their name from Dixon to D-i-c-k-s-o-n.

Thus it will be seen that appellants are seeking to establish themselves as heirs of the James Dixon of Kentucky by two means; the official birth and marriage records of England and the testimony of one of the appellants. None of the appellants who live in England within a few miles of Salford have offered their testimony, and it is not shown that any attempt was made to procure the birth certificate of Jane Dixon or any of the letters purported to have been written to England by the James Dixon of Kentucky. Furthermore, no explanation is offered regarding the difference of a year and ten months in the ages as recorded on the certificates of the Elizabeth Ann Dixon and Elizabeth Ann D-i-c-k-s-o-n.

The chancellor sustained exceptions to a substantial

part of the testimony offered for the appellants, but his judgment in ruling against them shows that he considered the records produced. What his decision would have been had he considered the excluded evidence, which we deem to be competent for the reasons set out above, we can not say. We are of the opinion, however, that he reached a correct conclusion, since it is our view that the weight of the evidence was in favor of the appellee.

The birth certificates offered by the appellants fail to establish as a fact that the illegitimate child, James Dixon, of Salford, England, is the same James Dixon who came to Kentucky. The latter stated throughout his lifetime here, by official records and declarations regarding his family history, that he was born in Gosforth, Cumberland County, England, and had a father named Arthur. None of the certificates purport to connect Jane Dixon with the supposed common ancestors, James Dixon and Sarah Ann Parkinson Dixon, or James D-i-c-k-s-o-n, whichever ones they may be. The distance between Salford, Lancaster County, and Gosforth, Cumberland County, is well over 75 miles, and the distance between Gosforth and White Haven is some 10 or 12 miles. It would seem much less likely that a James Dixon, under 20 years of age, would borrow money and leave the port of Manchester and journey almost a hundred miles to another port (White Haven) than it would for the same boy to leave from the port nearest his home. Distances are by no means controlling, but, where the area involved is so thickly populated (as is the Isle of Britain), and the name with which we are dealing such a common one, it is quite likely one would find several persons with the same name and about the same age within the territory under consideration. This observation is borne out by another exhibit filed with the deposition of one of appellee's witnesses. While it serves no useful purpose whatever, it does show that, within a hundred miles of Gosforth, there was yet another James Dixon, the son of yet another Jane Dixon, and none of the parties claim they have any connection with the family under consideration.

It is stated in the case of Aalholm v. People, supra, that identity of names, religion, and nativity are too common to be alone sufficient evidence of family connection. The appellants' witness herself does not support the in-

formation given by her declarant, and she does not state how, when, where, or under what circumstance she gained a personal knowledge of the aunt Jane Dixon, or to what extent she associated with her, if she did so. She does not say that she ever saw, knew, or communicated with the James Dixon of Kentucky, and does not now identify him in any way except to say "Yes," in response to the question, "Have you heard of a James Dixon who resided in Pineville, Bell County, Kentucky?" Nowhere in her testimony does the witness state that the James Dixon of Salford is the James Dixon of Kentucky, and the records exhibited indicate otherwise. For us to conclude that they are one and the same, we would have to find that the James Dixon of Kentucky, after being duly sworn, made false statements in his application for citizenship in 1897 and again in 1933 when he procured a marriage license, as well as various other times to his wife and associates among whom he was well known for many years.

The controlling evidence in this case is the marriage record of the declarant, together with his application for citizenship and his certificate of citizenship which are officially recorded in this country and his declarations to witnesses other than the appellee that he was born in England and had no relatives.

No witness who knew James Dixon in England ever saw him in Kentucky, and no witness who knew him here ever saw him in England; and if we reject his own statements as to who he was and whence he came, these inquiries must remain forever unanswered. If such were the rule of law, it would be impossible to establish legally the identity of many travelers who may die among strangers in distant lands, although in point of fact there may not be in any man's mind the slightest doubt as to who he was. Wise v. Wynn, 59 Miss. 588, 42 Am. Rep. 381.

Upon a consideration of the evidence as a whole, we are of the opinion that it fails to connect the James Dixon of Kentucky with the ancestors of these appellants.

Judgment affirmed.